Present:  Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and
Lemons, JJ., and Compton,* S.J.

JOSEPH WALTER NOBREGA
                                        OPINION BY
v.  Record No. 051378      JUSTICE LAWRENCE L. KOONTZ, JR.
                                         April 21, 2006
COMMONWEALTH OF VIRGINIA


          FROM THE COURT OF APPEALS OF VIRGINIA


     In an unpublished opinion, the Court of Appeals of Virginia

affirmed the convictions of Joseph Walter Nobrega in the Circuit

Court of the City of Norfolk on two counts of rape of a child

under age thirteen, Code § 18.2-61, and two counts of sexual

abuse of the same child over whom he maintained a custodial or

supervisory relationship, Code § 18.2-370.1.  Nobrega v.

Commonwealth, Record No. 0511-04-1 (May 10, 2005).  We awarded

Nobrega this appeal from the judgment of the Court of Appeals

pursuant to Code § 17.1-411.  Nobrega asserts three assignments

of error.  First, Nobrega contends that the trial court erred in

denying his motion for an independent psychiatric or

psychological examination of the complaining witness.  Second,

Nobrega contends that the Court of Appeals erred in holding that

the trial court lacked the authority to order the complaining

witness to undergo a psychiatric or psychological examination.

_____

     * Senior Justice Compton participated in the hearing and
decision of this case before his death on April 9, 2006.

Third, Nobrega contends that the Commonwealth's evidence was insufficient to support his convictions.

BACKGROUND

In November 2002, Nobrega's daughter ("the child"), who was then eleven years of age, reported to her mother that Nobrega had sexual intercourse with her on two prior occasions. Thereafter, on February 5, 2003, a grand jury indicted Nobrega on two counts of rape and two counts of sexual abuse occurring on two occasions between March 1, 1998 and September 30, 2000.[1]

Prior to trial, Nobrega filed a motion in the trial court seeking an order for an independent psychiatric or psychological examination of the child. In support of the motion, Nobrega asserted that the child had "long-standing emotional and mental health issues" that caused the child to experience "auditory and visual hallucinations, suicidal ideations, 'grandiose flight of ideas,' and impulsive behavior." Nobrega further asserted that

---

[1] At the time these indictments were returned by the grand jury, Code § 18.2-61(A) provided, in relevant part, that "[i]f any person has sexual intercourse . . . (iii) with a child under age thirteen as the victim, he or she shall be guilty of rape."

Code § 18.2-370.1(A) provided, in relevant part, that "[a]ny person eighteen years of age or older who maintains a custodial or supervisory relationship over a child under the age of eighteen . . . who . . . (vi) sexually abuses the child as defined in § 18.2-67.10(6), shall be guilty of a Class 6 felony."

the child had received treatment from numerous psychiatrists and psychologists, but that no "current, accurate and independent psychological and/or psychiatric evaluation" existed. Nobrega contended that since the "mental health and instability" of the child would be a "crucial factor" to his defense, due process required the trial court to grant the motion.

At a pretrial hearing, the Commonwealth argued that the motion was an attempt by Nobrega to have the examining psychiatrist testify at trial and comment on the child's credibility as a witness. Nobrega argued that his need to test the child's "suggestibility" was the basis for the motion. In a memorandum to the trial court, Nobrega elaborated that an examination was necessary "to determine [the child's] capacity to differentiate reality from imagination and her susceptibility to outside influences." According to Nobrega, the examination was vital to his defense because the Commonwealth's case hinged on the child's uncorroborated testimony.

Nobrega attached to his memorandum medical records documenting the child's mental health history. Those records supported Nobrega's assertion that the child had been diagnosed with various psychological disorders and at times had exhibited dysfunctional behavior.

3

The trial court held a second hearing on the motion. At this hearing, Nobrega addressed the child's competency as a witness for the first time, arguing that "this really is a competency issue . . . competency for her to testify." Nobrega maintained that the purpose of the requested psychological examination was to evaluate the child's competency to testify at trial. In doing so, Nobrega asserted that the examination was not for the purpose of testing the child's credibility as a witness.

The trial court denied Nobrega's motion. The trial court reasoned that, if the motion were granted, Nobrega would inevitably call the examining psychiatrist or psychologist as an expert witness to testify regarding the results of the examination. The trial court concluded that an expert witness giving such testimony would usurp the responsibility of the trial court to determine the child's competency to testify and the responsibility of the fact-finder to determine the child's credibility as a witness. The trial court further concluded that such expert testimony would be inadmissible because it would address an ultimate issue of fact, the credibility of the child as a witness.

Subsequently, the trial was conducted without a jury. Under well-established principles, we view the evidence

4

presented and all reasonable inferences deducible therefrom in the light most favorable to the Commonwealth, the prevailing party at trial. Coles v. Commonwealth, 270 Va. 585, 587, 621 S.E.2d 109, 110 (2005).

The child testified that the first incident occurred at the family's home on Farrell Avenue in Norfolk when she was seven years of age. She testified that she was alone in the home with her father while her mother was at work and her siblings were at school. The child related that she was told by Nobrega to put on a white nightgown, not to wear underwear, and to lay on her mother's bed. The child further related that after Nobrega put a bandanna over her eyes, he "stuck his private part into mine." Continuing, the child described the remainder of Nobrega's actions as going "to the bathroom . . . [i]nside of me" and that it felt "warm and icky." The child testified that Nobrega's actions caused her to bleed from her "private part." She further testified that Nobrega told her that he would kill her if she ever told anyone what had happened.

The child testified that the second incident occurred when she was eight years of age and after the family had moved to a home on Randall Avenue in Norfolk. Her account of this incident was nearly identical to the first. The child related that Nobrega again told her to put on a white nightgown, instructed

5

her to lay on her mother's bed, and placed a bandanna over her eyes. She further related that Nobrega then "opened my private" with his hand and "stuck his private part in[]." She testified that Nobrega again threatened to kill her if she told anyone what had happened.

The Commonwealth also presented the testimony of a physician who examined the child soon after the child reported the rapes. The physician testified that the child's genital anatomy revealed no evidence of prior injury or sexual contact. The physician opined that the absence of physical symptoms of prior sexual contact could be attributable to healing and pre-adolescent development commonly occurring in girls of the child's age.

The trial court found Nobrega guilty on both counts of rape and both counts of sexual abuse as charged in the indictments. By order dated March 2, 2004, the trial court sentenced Nobrega to confinement for a total of 60 years, with 30 years suspended.

Nobrega perfected an appeal from his convictions to the Court of Appeals of Virginia. In that appeal, he asserted two issues: (1) whether the trial court erred in denying Nobrega's motion for an independent psychiatric or psychological examination of the complaining witness, and (2) whether the

evidence was sufficient to support the convictions.  Nobrega,

Record No. 0511-04-1, slip op. at 1.

The Court of Appeals held that the trial court's reasons

for denying Nobrega's motion were erroneous.[2]  Nevertheless, the

Court of Appeals, relying on Clark v. Commonwealth, 262 Va. 517,

551 S.E.2d 642 (2001), held that the trial court lacked the

authority to grant Nobrega's motion and, thus, the trial court's

errors were not reversible.  Nobrega, Record No. 0511-04-1, slip

op. at 9-14.

The Court of Appeals then rejected Nobrega's contention

that the Commonwealth's evidence was insufficient to support his

convictions and, accordingly, affirmed those convictions.  Id.

at 11-13.  This appeal followed.

-------

[2] The Court of Appeals rejected the trial court's finding
that an examining psychiatrist's testimony on a witness'
competence would usurp the trial court's authority to determine
competence because a trial court has the discretion to permit
expert testimony in determining a witness' competency.  Nobrega,
Record No. 0511-04-1, slip op. at 6 (citing Helge v. Carr, 212
Va. 485, 491, 184 S.E.2d 794, 796 (1971) and Turnbull v.
Commonwealth, 216 Va. 328, 334, 218 S.E.2d 541, 546 (1975)).
The Court of Appeals also concluded that expert testimony
addressing a witness' "mental disorder and the hypothetical
effect of that disorder" on the witness can be admitted so long
as it does not address the credibility of a witness' testimony
or an ultimate issue of fact.  Id. at 8 (citing Pritchett v.
Commonwealth, 263 Va. 182, 187, 557 S.E.2d 205, 208 (2002)).

7

DISCUSSION

We begin our analysis in this appeal by first clarifying that the issue to be resolved with regard to Nobrega's motion for an independent psychiatric or psychological examination of the complaining witness is a narrow one. We are not called upon to consider the competency of this witness, which implicitly was resolved by the trial court when it permitted her to testify at Nobrega's trial. Nor must we decide whether the trial court should have exercised its discretion to appoint an expert to evaluate the mental health records of the witness in order to assist Nobrega in a challenge to the competency of the witness. The sole issue is whether the trial court had the authority to require the complaining witness to be examined by an appropriate mental health expert.

The Court of Appeals resolved this issue based on our decision in Clark. In that case, the defendant was charged with statutory rape and forcible sodomy of a child under thirteen years of age. 262 Va. at 518, 551 S.E.2d at 643. Prior to trial, the defendant moved the trial court to order the complaining witness to undergo an independent medical examination of her sexual anatomy. Id. at 519, 551 S.E.2d at 643. The trial court denied the motion, and we ultimately affirmed. Describing the motion as a "discovery effort," we

8

found that "in Virginia, no authority exists permitting such discovery" by constitutional mandate, statute, rule of court, or case law.  Id. at 520, 551 S.E.2d at 644.  We expressly declined in Clark to create authority for a trial court to compel physical examinations of complaining witnesses in rape cases.  Id.

Nobrega distinguishes his case from Clark on several grounds.  He argues that an evaluation by a psychiatrist or psychologist would be less intrusive than a physical examination of the sexual anatomy of a complaining witness.  He further argues that, since the complaining witness in the present case had undergone numerous mental health examinations in the past, the requested examination would not traumatize her and would be, at most, a slight burden on her.  The thrust of his contention is that the requested examination should be allowed when, as here, it is established that the complaining witness in a rape case has a history of mental disorders and there is no corroboration that the crime occurred.  In the absence of any authority for this position in Virginia, Nobrega asks that we create that authority in this case.  We will not do so.

We need not reach an opinion with regard to the merits or the significance of the obvious distinctions Nobrega notes between the circumstances of his case and those in Clark.

9

Specifically, we need not decide, as he contends, that a mental health examination of a complaining witness in a rape case is less intrusive than the requested genital examination of the complaining witness at issue in Clark. We are of opinion, however, that mental health examinations are nevertheless highly intrusive and may violate a complaining witness' sense of privacy. See State v. Looney, 240 S.E.2d 612, 627 (N.C. 1978)(psychological examination is "an inquisition into [the victim's] most personal and private relations and past history"). This is especially true with victims of sex crimes. See United States v. Benn, 476 F.2d 1127, 1131 (D.C. Cir. 1972) (stating that "the trauma that attends the role of complainant to sex offense charges is sharply increased by the indignity of a psychiatric examination"). Moreover, no statute or rule of court in Virginia authorizes the psychiatric or psychological examination Nobrega requests in this case.

The Constitution of Virginia establishes rights for both criminal defendants and crime victims. Article 1, Section 8 guarantees criminal defendants the right to "call for evidence in [their] favor." We have stated that this right includes "the right to prepare for trial . . . and to ascertain the truth." Clark, 262 Va. at 520, 551 S.E.2d at 644 (quoting Bobo v. Commonwealth, 187 Va. 774, 779, 48 S.E.2d 213, 215 (1948)).

10

With equal force, Article 1, Section 8-A guarantees that crime victims will be "treated with respect, dignity and fairness at all stages of the criminal justice system." Indeed, the need to ensure the fair treatment of crime victims is one reason why a criminal defendant's right to call for favorable evidence is "not boundless." See Clark, 262 Va. at 520, 551 S.E.2d at 644 (citing Lowe v. Commonwealth, 218 Va. 670, 679, 239 S.E.2d 112, 118 (1977)).

In this case, Nobrega's constitutional right to call for evidence in his favor is not implicated. In Virginia, the trial court determines whether a witness is competent and in making that determination the court "may, but is not obligated to, consider the opinion evidence of experts. It is a matter within the discretion of the trial court." Turnbull v. Commonwealth, 216 Va. 328, 334, 218 S.E.2d 541, 546 (1975) (citation omitted). The reliance our common law places on the trial court's determination of the competency of a witness reflects the balance between the constitutional rights of a criminal defendant and those of crime victims. We are of opinion that altering that balance by authorizing a trial court to require a rape victim to undergo an independent psychiatric or psychological examination to assist in the determination of the

11

victim's competency to testify is a matter properly left to the General Assembly to consider as an issue of public policy.

In the absence of such action by the General Assembly, we are unpersuaded by Nobrega's contention that a majority of jurisdictions have adopted a "compelling need" test to authorize such examinations.  Under this approach, trial courts have the discretion to order a psychiatric or psychological examination of a complaining witness in a criminal case where the defendant demonstrates a "compelling need" for the examination.  See, e.g., State v. Nelson, 453 N.W.2d 454, 458 (Neb. 1990); Forbes v. State, 559 S.W.2d 318, 321 (Tenn. 1977); State v. Jerousek, 590 P.2d 1366, 1371 (Ariz. 1979); State v. Gregg, 602 P.2d 85, 91 (Kan. 1979).

We have no doubt that the possibility of undergoing court-ordered psychiatric or psychological examinations as a consequence of reporting rapes could deter victims from coming forward.  See Looney, 240 S.E.2d at 627 (stating that the prospect of a psychological exam may "discourage the honest, innocent victim of a genuine assault from going to the authorities with a complaint"); Forbes, 559 S.W.2d at 320 (rule mandating rape victim's participation in psychiatric exams sought by defendants would be "contrary to public policy" because it would "deter prosecution for this loathsome criminal

12

act"). Historically, rape victims have been particularly vulnerable to defense tactics that "put the victim on trial." See Winfield v. Commonwealth, 225 Va. 211, 218, 301 S.E.2d 15, 19 (1983). The General Assembly has furthered the public policy of encouraging victims to come forward by passing legislation to curb such tactics. See Code § 18.2-67.7 ("rape shield" statute).

Nevertheless, we recognize that the established history of mental illness of a particular complaining witness may create a heightened danger that the witness lacks the capacity accurately to observe, remember, and communicate facts. Hopkins v. Commonwealth, 230 Va. 280, 291, 337 S.E.2d 264, 271 (1985); Helge v. Carr, 212 Va. 485, 487-91, 184 S.E.2d 794, 795-98 (1971). It is axiomatic that an individual accused of the crime of rape has a vital interest in ascertaining the competency of such a complaining witness to testify. However, we believe that an accused's ability to voir dire a complaining witness, the trial court's skill and experience in observing testimony, and the presentation of the mental health records and expert testimony regarding those records provide adequate safeguards to the accused to test the competency of the complaining witness without a court-ordered mental health examination of that witness. Thus, we hold that a trial court has no authority to

13

order a complaining witness in a rape case to undergo a
psychiatric or psychological evaluation.[3]

    We turn next to address Nobrega's contention that the
Commonwealth's evidence was insufficient to support his
convictions.  In accord with well-established principles, we
will not reverse the judgment of the trial court unless it is
plainly wrong or without evidence to support it.  Commonwealth
v. Presley, 256 Va. 465, 466, 507 S.E.2d 72, 72 (1998).  We also
accept the trial court's determination of the credibility of
witness testimony unless, "as a matter of law, the testimony is
inherently incredible."  Walker v. Commonwealth, 258 Va. 54, 70–
71, 515 S.E.2d 565, 575 (1999).

    Nobrega does not dispute that, at the time of the alleged
rapes, the child was under the age of thirteen and Nobrega was
eighteen years or older.  See Code § 18.2-61(A)(iii)(rape
includes sexual intercourse with a child under thirteen); Code
§ 18.2-370.1 (applying to acts by an adult on a child under
eighteen).  Furthermore, it is undisputed that when the alleged
rapes occurred, Nobrega had a "custodial or supervisory
relationship" with the child.  See Code § 18.2-370.1(A).  Thus,

---

    [3] Because we will affirm the Court of Appeals' holding that
a trial court has no authority to order a complaining witness in
a rape case to undergo a psychiatric or psychological

14

if the evidence established beyond a reasonable doubt that Nobrega engaged in sexual intercourse with the child, Nobrega's contention that the evidence was insufficient to convict him under Code § 18.2-61 and Code § 18.2-370.1 must fail.

The child testified that, on two occasions, Nobrega put his "private part" into her "private part" and "went to the bathroom" inside her. A rational fact-finder certainly could understand the child's detailed account of those acts to be a description of sexual intercourse. Nobrega contends, however, that inconsistencies in the child's testimony, the child's history of mental illness, and the lack of physical evidence rendered the child's testimony unworthy of belief. We disagree.

While the child's testimony did contain minor inconsistencies, her testimony did not waiver with regard to the acts of sexual intercourse. Although the child's mental health history bears on the weight to be given her testimony, the trial court found her testimony to be credible. The record does not support a conclusion that her mental health history rendered her testimony inherently incredible as a matter of law. Finally, the testimony of the physician who physically examined the child showed that the lack of physical evidence of sexual intercourse

---

examination, we need not address whether the reasons given by the trial court for denying Nobrega's motion were erroneous.

15

could have been the result of the natural healing and growth process of a girl of the child's age.

As we have stated, the victim's testimony alone, if not inherently incredible, is sufficient to support a conviction for rape.  See Snyder v. Commonwealth, 220 Va. 792, 796, 263 S.E.2d 55, 57 (1980); Fogg v. Commonwealth, 208 Va. 541, 546, 159 S.E.2d 616, 620 (1968).  Since the child's testimony that Nobrega engaged in sexual intercourse with her was not inherently incredible, the trial court was entitled to rely on her testimony.  Accordingly, we hold that the Commonwealth's evidence was sufficient to support Nobrega's convictions under Code § 18.2-61 and Code § 18.2-370.1.

CONCLUSION

For the foregoing reasons, the holding of the Court of Appeals that a trial court has no authority to order a complaining witness in a rape case to undergo a psychiatric or psychological examination was correct.  The Court of Appeals also correctly held that the Commonwealth's evidence was sufficient to support Nobrega's convictions under Code § 18.2-61 and Code § 18.2-370.1.  Accordingly, the judgment of the Court of Appeals will be affirmed.

Affirmed.