COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Clements and Senior Judge Coleman
Argued at Richmond, Virginia


EDWARD LOUIS ELAM, A/K/A
 ED LOUIS ELAM

                                                              MEMORANDUM OPINION[*] BY
v.        Record No. 3046-06-2                    JUDGE JEAN HARRISON CLEMENTS
                                                                    DECEMBER 11, 2007

COMMONWEALTH OF VIRGINIA


                 FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
                                   Leslie M. Osborn, Judge

              George E. Marzloff (George E. Marzloff & Associates, P.C., on
              brief), for appellant.

              Gregory W. Franklin, Assistant Attorney General (Robert F.
              McDonnell, Attorney General, on brief), for appellee.


        Edward Louis Elam (appellant) was convicted in a bench trial of rape, in violation of

Code § 18.2-61.  On appeal, he contends the trial court erred in finding the evidence sufficient,

as a matter of law, to support his conviction.  We disagree and affirm appellant's conviction.

        As the parties are fully conversant with the record in this case, and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of

this appeal.

                                    I.  BACKGROUND

        "Under familiar principles of appellate review, we view the evidence and all reasonable

inferences fairly deducible from that evidence in the light most favorable to the Commonwealth,

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the party that prevailed below." Banks v. Commonwealth, 41 Va. App. 539, 543, 586 S.E.2d 876, 877 (2003). So viewed, the evidence established that, C.J., a thirteen-year-old girl, had lived with her twin sister, C., her younger brother, D., her mother, Patricia Elam (mother), and appellant since 1992 in Mecklenburg County. Appellant was D.'s biological father, and Avis Johnson, mother's first ex-husband, was C.J.'s and C.'s biological father. C.J. and C. attended Blue Stone Middle School

One morning sometime between September 1, 2001 and November 24, 2001, C.J. stayed at home from school because she had menstrual cramps. Appellant also remained home while C.J. slept in her room. At some point that morning, appellant entered C.J.'s room, pulled her to the end of her bed by her ankles, removed her shirt and her pants, and raped her. Subsequently, he left the bedroom and C.J. fell asleep. When she awoke, she was nude and walked upstairs to find appellant also nude in the laundry room. Appellant yelled at her to get dressed.

After C.J. dressed, appellant and one of his friends drove her to school. C.J. entered the school alone and stopped by the office, informed school personnel that she was late, but she provided no excuse note. C.J. signed-in and went to third period, telling no one about the rape.

On November 24, 2001, mother separated from appellant, withdrew C.J. and C. from Blue Stone Middle School, and moved with her children to Brunswick County. In February 2004, C.J. told her uncle, Robert Douglas, with whom she and her family lived, that appellant had raped her. In October 2005, mother filed for divorce from appellant in the Circuit Court for Baltimore County, Maryland, also seeking sole custody of D. On December 27, 2005, C.J. told an investigator that appellant had raped her. Subsequently, appellant was charged with rape.

At trial, C.J. testified that on the morning of the rape, mother was working at the Quik Stop and C. was attending school. She also stated that she delayed reporting the rape because she was "scared," "afraid of what would happen," and told her uncle in 2004 because she "was

- 2 -

no longer under a roof" where appellant was abusing her. On cross-examination, she admitted that she knew mother and appellant had a custody dispute concerning D., but denied that her rape allegation stemmed from that dispute.

Mother testified that she worked during the day at the Quik Stop in La Crosse throughout the fall of 2001 and denied working at the Quik Stop in Chase City during this time. She testified that her schedule varied and she could not recall the exact times of her daily shift in the fall of 2001. Mother stated that if her child remained home from school sick, she usually, but not always, remained home from work as well. During the September to November 2001 time period, mother testified that appellant had no steady job.

Mother further claimed that she did not use her children against their fathers. Considering appellant's history of domestic violence with mother, mother testified that she no longer wanted her children to have contact with appellant.

Edwina Smith testified that she owned and operated the Quik Stop convenience stores in La Crosse and Chase City between September 1, 2001 and November 24, 2001. Smith also stated that during that same time period, mother worked for the Chase City store from 2:30 p.m. to 12:30 a.m. Smith testified that mother never worked the morning shift. Smith claimed that on October 5, 2001, mother did not work her scheduled shift because her child was sick. On cross-examination, Smith stated that she did not verify the employees' presence during their shifts and that "it's always a possibility" that the schedule documenting hours worked by employees reflected mistakes.

Yvonne Allgood, a guidance counselor at Blue Stone Middle School during C.J.'s attendance, testified that the attendance clerk updated the attendance records for each school day. Allgood stated that, according to C.J.'s attendance record, she missed no school days in September 2001, had an excused absence October 5, 2001, had no tardies, and otherwise

- 3 -

attended every school day during the fall of 2001 until the date of her withdrawal on November 26, 2001.

Allgood also testified that attendance is taken at the beginning of each day in homeroom and then entered as the official attendance record in the school computer system. Occasionally, children missing in homeroom are noted as present by mistake. If a student reports to school later in the day, the record is updated. Allgood stated that it "could happen" that a child late for school could appear in between class and go directly to her next class without first reporting to the school office. Allgood further testified that the attendance record is not "one hundred percent because we're human," and she was sure the record reflected mistakes.

At the close of all of the evidence, appellant argued a motion to strike, claiming the evidence did not support a conviction beyond a reasonable doubt because C.J. "contradicted herself with respect to her own testimony." The trial court denied appellant's motion and convicted appellant of rape.

This appeal followed.

## II. ANALYSIS

On appeal, appellant contends the evidence was insufficient, as a matter of law, to support his conviction because C.J.'s "testimony [was] so inherently incredible and contrary to human experience and behavior that it [was] unworthy of belief." We disagree.

"In accord with well-established principles, we will not reverse the judgment of the trial court unless it is plainly wrong or without evidence to support it." Nobrega v. Commonwealth, 271 Va. 508, 518, 628 S.E.2d 922, 927 (2006). "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).

- 4 -

"[A] conviction for rape . . . may be sustained solely upon the uncorroborated testimony of the victim." Wilson v. Commonwealth, 46 Va. App. 73, 87-88, 615 S.E.2d 500, 507 (2005) (citing Garland v. Commonwealth, 8 Va. App. 189, 191-93, 379 S.E.2d 146, 147 (1989)). "[I]t is not sufficient to warrant a verdict of guilty beyond a reasonable doubt if the evidence is inherently incredible, or so contrary to human experience or to usual human behavior as to render it unworthy of belief." Willis v. Commonwealth, 218 Va. 560, 563, 238 S.E.2d 811, 813 (1977) (citations omitted). In other words, the testimony "'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" Cardwell v. Commonwealth, 209 Va. 412, 414, 164 S.E.2d 699, 701 (1968) (quoting Burke v. Scott, 192 Va. 16, 23, 63 S.E.2d 740, 744 (1951)).

In this case, the Commonwealth relied almost exclusively on C.J.'s testimony to establish appellant's guilt. The trial court, that had the opportunity to observe C.J. as a witness, credited her testimony. Thus, we are bound by the court's credibility determination unless C.J.'s testimony was inherently incredible, as a matter of law. See Nobrega, 271 Va. at 518, 628 S.E.2d at 927.

Appellant claims C.J.'s testimony was inherently incredible, as a matter of law, because Smith testified that mother never worked mornings and in fact, contrary to mother's own testimony, she worked at the Chase City location instead of the La Crosse location during that time. Appellant also asserts that according to Allgood's testimony, C.J. had no tardy notations on her school attendance record from September through November 2001. Therefore, appellant argues, because Smith and Allgood had "no reason to lie," C.J., having testified that her mother was at work that morning and claiming that she attended school tardy that day, must have fabricated the rape. Appellant also finds it "unbelievable" that C.J. claimed to have fallen asleep

- 5 -

immediately after the rape and then later accepted a ride from appellant and his friend without informing the friend of the rape. Appellant further discredits C.J.'s testimony because she delayed reporting the rape.

Notwithstanding appellant's claims to the contrary, the discrepancies presented by Smith's and Allgood's statements, and C.J.'s claim that she fell asleep following the rape and later accepted a ride from appellant and his friend without telling the friend of the rape, do not render C.J.'s account of the rape inherently incredible. Indeed, the trial court as fact finder could reasonably infer that mother simply was not home the morning of the rape, finding irrelevant when and where mother worked that day. The trial court also could properly conclude C.J. was in fact tardy to school the morning of the rape, crediting Allgood's explanations on cross-examination that in certain scenarios, C.J. could have been absent but instead, marked present, because the school records were not devoid of errors. Additionally, the trial court could reasonably believe C.J.'s claim that she fell asleep after the rape and then accepted a ride from appellant and his friend without informing the friend of the rape.

We also reject appellant's claim that C.J.'s delay in reporting the rape makes her testimony incredible. "To the contrary, [the victim's] delay is explained by and completely consistent with the all too common circumstances surrounding sexual assault on minors--fear of disbelief by others and threat of further harm from the assailant." Woodard v Commonwealth, 19 Va. App. 24, 28, 448 S.E.2d 328, 330 (1994). Here, C.J. testified that she delayed reporting the rape because she was "scared," "afraid of what would happen," and eventually told her uncle because she was "no longer under a roof where [she] was being abused" by appellant. Mother also conceded that appellant had a history of domestic violence, and in fact, her children witnessed instances when she and appellant argued and pushed. Given these circumstances, C.J.'s delay in reporting the rape was not so unusual or inherently incredible.

It is clear, therefore, that C.J.'s account of the incident was consistent with regard to appellant's commission of the rape. To the extent that C.J.'s testimony contained minor inconsistencies, it was up to the trial court as the finder of fact to account for those discrepancies in weighing their credibility. Thus, we hold that C.J.'s testimony was not inherently incredible, as a matter of law.

Appellant also challenges the sufficiency of the evidence, as a matter of law, to support his conviction beyond a reasonable doubt because the trial court made a "finding of fact" that "this [was] a close case." Furthermore, appellant argues the Commonwealth "failed to prove the act was without the victim's consent." Appellant, however, never made these specific arguments to the trial court.

Rule 5A:18 provides in pertinent part, that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Pursuant to Rule 5A:18, we "will not consider an argument on appeal [that] was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). Thus, it is clear that, despite having had the opportunity to do so, appellant did not raise below, and the trial court was not given the opportunity to address, the claims appellant now raises on appeal. We hold, therefore, that appellant is barred by Rule 5A:18 from raising these claims for the first time on appeal.

Moreover, our review of the record reveals no reason to invoke the "ends of justice" or "good cause" exceptions to Rule 5A:18. See Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997) ("In order to avail oneself of the [ends of justice] exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred."); M. Morgan Cherry & Assocs. v. Cherry, 38 Va. App. 693,

702, 568 S.E.2d 391, 396 (2002) (en banc) (holding that the "good cause" exception to Rule

5A:18 will not be invoked where appellant had the opportunity to raise the issue at trial but did

not do so).

For these reasons, we affirm appellant's conviction.

Affirmed.