UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Beales and Raphael
Argued at Norfolk, Virginia

DAMONTAE LAMAR DIGGS

                                      MEMORANDUM OPINION* BY
v.       Record No. 0013-23-1          JUDGE STUART A. RAPHAEL
                                       DECEMBER 19, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF GLOUCESTER COUNTY
Jeffrey W. Shaw, Judge

(Sydney H. Speight; John A. Singleton; GibsonSingleton PLLC, on
brief), for appellant. Appellant submitting on brief.

David A. Mick, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Damontae Lamar Diggs appeals his six convictions arising from armed robberies at three

different convenience stores in Gloucester County. He argues that there was not enough

circumstantial evidence to prove beyond a reasonable doubt that he was the robber. We disagree

and affirm his convictions.

BACKGROUND

On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth,

the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard"

the defendant's evidence when it conflicts with the Commonwealth's evidence, "regard as true

all the credible evidence favorable to the Commonwealth," and read "all fair inferences" in the

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

Commonwealth's favor. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On May 29, 2021, Nichole Bass was robbed as she worked the morning shift at a Speedway gas station in Gloucester County. At about 6:15 a.m., Bass noticed a Black male outside the store; he was dressed in black, carried a gun, and wore a wig and a hoodie with a distinctive design on the front. Bass ran to lock the front door, but she did not get there in time. The gunman pushed her backward as he entered the store. He said he "just want[ed] the money." Bass surrendered about $210 from two cash registers. The robber fled from the store in the direction of Burleigh Road. Bass then saw a gray car drive past the store from the area of Burleigh Road, heading toward Route 17; the gray car was missing a hubcap on the passenger side of the vehicle.

In reviewing the store's surveillance-camera video, the police noted a gray Honda Civic missing its right-front hubcap drive back and forth past the Speedway several times. The car headed west on Burleigh Road. After that, the gunman approached the Speedway on foot. After leaving the Speedway, he headed toward Burleigh Road. The gray car then traveled from Burleigh Road across Route 17.

Diggs was not at work that day. But his cellphone traveled from a location in Suffolk near Diggs's home to an area near the Speedway, then returned to Suffolk.

Four days later—just after midnight on June 2, 2021—Ashley Pendleton was working at the Tidemill Road 7-Eleven in Gloucester County when a man with "a rifle or a gun" entered the store. The gunman's face was covered, and he wore a hoodie with an emblem on the front. The gunman demanded money, and Pendleton gave him about $73 from the two cash registers. When the gunman left, Pendleton called the police.

That evening, at about 10:00 p.m., Stephen Girard was robbed at gunpoint while working at the Hickory Fork Road 7-Eleven in Gloucester.  The robber was a Black male, dressed in black.  He demanded "all the money," and Girard gave him $187, emptying both cash registers.  The robber exited the store and headed to the left.  Girard immediately called the police, who arrived within thirty seconds.

Police officers quickly noticed a gray Honda Civic, missing the right-front hubcap, parked about 200 yards from the store's entrance.  The police secured the car within a minute-and-a-half of their arrival.  The car was running in auxiliary mode, and the radio was playing.  The police heard a phone ringing inside.  Heavy rain began to fall.

The police were investigating the Hickory Fork 7-Eleven robbery when Ashley Planalp reported for work at the Wawa next door.  About 30 minutes later, Diggs entered the Wawa and asked to use the telephone.  Diggs wore a shirt with the emblem, "The Other Moving Company," the business where Diggs was employed.  About an hour later, Diggs came back and asked to use the phone again.  He returned a third time to use the phone.  Planalp asked Diggs if "everything [was] okay," and Diggs responded that he was waiting on a ride.

Between his visits inside, Diggs remained outside the Wawa, watching the police activity at the Hickory Fork 7-Eleven.  Finding Diggs's behavior suspicious, Planalp called the police at 12:40 a.m.  The police arrived and detained Diggs.  Diggs said he lived in Suffolk and that he was waiting for his brother to pick him up.[1]

Diggs worked at his job that day from 2:00 p.m. to 5:30 p.m., in between the two 7-Eleven robberies.  The moving company's main office was located about a half mile from the Hickory Fork 7-Eleven and the Wawa.  Cellphone-tower data showed that Diggs's phone was in

---

[1] Crystal Johnson, Diggs's mother, testified that Diggs lived at her Suffolk home along with Diggs's children, Diggs's brother, and the brother's girlfriend.

the area near the Tidemill Road 7-Eleven before the morning robbery there, and near the Hickory Fork 7-Eleven at the time of the evening robbery there.

A police-canine unit obtained a "scent article" from the headrest of the driver's seat of the Honda. The dog tracked the scent from the front of the Hickory Fork 7-Eleven, through a field and trees, to the Honda. As they later approached the Wawa, the dog began pulling harder and moving faster. Encountering Diggs at the Wawa where he was detained, the dog alerted to him, showing that it had found the target of the search. The police arrested Diggs. He had $117 in one of his pants pockets and $22 in his other pocket. His pants were wet.

The police searched the Honda and found a cellphone that answered to Diggs's cellphone number.[2] The police also found a black ski mask and $341 in cash. The Federal Bureau of Investigation analyzed cellphone-tower data to determine the location and movement of the phone on the dates of the robberies.

Diggs's cellphone contained two photographs of a person carrying a rifle, with his face covered, and wearing a hoodie emblazoned with an emblem of wings. That person had the same physical appearance as the gunman who appeared in the stores' surveillance videos of the incidents. Diggs's phone also contained a video recorded by a doorbell camera showing what appeared to be that same person. He wore the same hoodie, carried a gun, ran toward the door of Diggs's home in Suffolk, touched the doorknob, and ran away from the house.

The police had earlier searched the area surrounding the Hickory Fork 7-Eleven 10 to 15 times, but they found no evidence of the June 2, 2021 robbery. But during a search of the area

---

[2] Johnson, Diggs's mother, testified that the Honda Civic belonged to Diggs's sister but that many members of the household used it, including Diggs's former girlfriend, Janay Foster. Johnson said that Diggs often left his cell phone in the Honda when others used the car. Foster had used Diggs's cell phone multiple times.

behind the Wawa on June 16, 2021, the investigative team found a collection of clothing balled up together with a pellet rifle.

The ball of clothing included a black scarf, a black wig, and a dark hoodie with an emblem of wings on the front. The items were found about 150 to 200 feet from the Wawa parking lot. The surveillance-camera video from each of the three crime scenes showed that the hoodie and the gun were similar to the gunman's during each robbery.

Diggs was indicted on three counts of robbery by use of a firearm (Code § 18.2-58) and three counts of using a firearm in the commission of a felony (Code § 18.2-53.1). The trial court denied Diggs's motion to strike and renewed motion to strike, and the jury found him guilty on all charges. The court sentenced Diggs to 20 years' incarceration, with no time suspended, and 3 years of post-release supervision.

ANALYSIS

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

In the same vein, "determining the credibility of the witnesses and the weight afforded [their] testimony . . . are matters left to the trier of fact, who has the ability to hear and see them

as they testify." *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). We "accept the trial court's determination of the credibility of witness testimony unless, 'as a matter of law, the testimony is inherently incredible.'" *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006) (quoting *Walker v. Commonwealth*, 258 Va. 54, 70-71 (1999)).

Diggs argues that the evidence was insufficient to convict him because no witness identified him as the robber and there was no DNA or fingerprint evidence linking him to the crimes. He says that the cellphone-tower data placed only his phone near the robberies, not him. And he emphasizes that multiple people had access to his phone when borrowing the car. He concludes that the evidence "failed to exclude the hypothesis that someone other than Diggs committed the [robberies]."

We are not persuaded. The record amply supports the jury's conclusion that Diggs was the person who robbed the three convenience stores at gunpoint. Each robbery was committed by a Black male wearing the same distinctive hoodie and carrying the same firearm over a four-day period. Diggs had a video on his cellphone of a Black male running towards Diggs's front door while wearing a hoodie with the same distinctive emblem. And the matching clothing and firearm were found in a field behind the Wawa, where Diggs was detained shortly after the Hickory Fork 7-Eleven robbery.

A gray Honda Civic missing its right-front hubcap was found running in auxiliary mode outside the Hickory Fork 7-Eleven right after the robbery there. A gray car missing its right-front hubcap was seen near the Speedway robbery. The police-canine unit tracked Diggs's scent from the Hickory Fork 7-Eleven to the Wawa, and the dog alerted on Diggs. Diggs admitted that the Honda was his and that he was driving it that day. He also admitted that the phone in the car was his.

Finally, the cellphone-tower data showed that Diggs's cellphone was near each convenience store when each robbery occurred.  And all three robberies happened when Diggs was not working at his job nearby.

CONCLUSION

In short, there was sufficient circumstantial evidence to find Diggs guilty beyond a reasonable doubt.  A rational jury could properly reject Diggs's theory that someone else committed the crimes, and its verdict was not "plainly wrong or without evidence to support it." *Ingram*, 74 Va. App. at 76.

*Affirmed.*