COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Malveaux and Raphael
Argued at Williamsburg, Virginia

UNPUBLISHED

TREVON MARQUIS GOODRICH

MEMORANDUM OPINION[*] BY
v.      Record No. 2036-23-1          JUDGE STUART A. RAPHAEL
JANUARY 14, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge

Thomas H. Sheppard, II (Sheppard & O'Brien, P.C., on brief), for
appellant.

Ken J. Baldassari, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Appealing his rape conviction, Trevon Marquis Goodrich argues that the victim's

testimony was inherently incredible because it was internally inconsistent and parts of it

conflicted with the testimony of two other witnesses who were present. He also seeks

resentencing on the ground that the trial judge considered at sentencing an incriminating

admission he had made that the judge had excluded during the guilt phase. Finding neither

argument meritorious, we affirm his conviction.

BACKGROUND

On appeal, we recite the facts in the light most favorable to the Commonwealth, the party

that prevailed at trial. *Camann v. Commonwealth*, 79 Va. App. 427, 431 (2024) (en banc).

"Doing so requires that we 'discard' the defendant's evidence when it conflicts with the

Commonwealth's evidence, 'regard as true all the credible evidence favorable to the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

Commonwealth,' and read 'all fair inferences' in the Commonwealth's favor." *Id.* (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

*A. The incident*

The crime here happened in a hotel room after a business banquet at the Virginia Beach Conference Center. Jamie, Craig, Goodrich, and the female victim attended a work banquet hosted by Portfolio Recovery Associates.[1] The victim and Craig were both employees of the company. They were also dating each other. Each brought a guest to the banquet: the victim brought her female friend, Jamie; Craig brought his friend, Goodrich. After the banquet, the four ate, drank, and hung out in a hotel room that Jamie and the victim had booked. When it was time to go to bed, the victim and Craig slept together in one bed, while Jamie and Goodrich took the other. The victim and Craig had consensual sex before falling asleep.

The victim awoke to the feeling of a penis inside her vagina. At first, she thought it was Craig's. But when she opened her eyes and saw Craig sleeping next to her, she realized it was Goodrich. After the victim screamed, a fight ensued between Goodrich and Craig. Jamie ordered both men to leave, and she called the police. The victim was crying and shaking.

Detective Melissa Johnston brought Goodrich to the police station for questioning. She testified that his story kept changing. At first, Goodrich denied having any kind of sexual contact with the victim. Goodrich then conceded that, although he touched the victim's face, he never "touched her 'pussy'" and he did not "fuck or rape her." Goodrich claimed that he didn't rape the victim because she "didn't wake up and say, 'stop, stop, stop.'" He thought it was fair to "try [his] shot" with her because she was not officially Craig's girlfriend.

By the time the interview was over, Goodrich had admitted to touching the victim's vagina, "exposing his penis and masturbating while he touched her," and "putting his penis in

---

[1] We use partial names and "the victim" to protect the privacy of the three witnesses.

her mouth." He said he had also tried "to put his penis in her vagina," but that "didn't work." On a piece of paper, the detective drew a circle to represent a vagina. She asked Goodrich to show where he put his penis. Goodrich touched the tip of his pen to various parts of the circle.

*B. Pretrial matters*

A grand jury indicted Goodrich on one count of rape through mental incapacity or helplessness, one count of object penetration, and one count of forcible sodomy. The Commonwealth nolle prossed the object-penetration and sodomy charges.[2] At a motion *in limine* hearing a year later (February 8, 2021), the court excluded the statements made by Goodrich to Detective Johnston relating to the nolle prossed charges. Referencing the ongoing COVID-19 pandemic, the trial court said, "I have no idea when we're going to be doing juries again," but "the prejudicial value of any statements about anything else that has not been charged outweighs the . . . value to the jury or the finder of fact."

*C. The trial*

On the morning of trial in June 2023, Goodrich waived his right to a jury trial and was tried by the court instead. At the two-day bench trial, the Commonwealth called the victim to testify, then Jamie, a sexual assault nurse examiner, and Detective Johnston. In the defense case, Goodrich called Craig.

Goodrich moved to strike at the close of all evidence, arguing that the victim's allegations were inherently incredible. Goodrich said that it made no sense that the victim could be asleep but feel a penis inside her. Goodrich also argued that, even if the victim's account were credible, it conflicted with Craig and Jamie's accounts. The victim testified that she was asleep on her side when the rape occurred. Craig testified that the victim was bent over with

---

[2] Goodrich's statements to Detective Johnston provided the only evidence supporting the nolle prossed charges. *See Watkins v. Commonwealth*, 238 Va. 341, 348 (1989) ("[A]n accused cannot be convicted solely on his uncorroborated extrajudicial admission or confession.").

both feet on the ground and Jamie described seeing the victim "bent over like doggie style" in front of Goodrich. Both denied hearing the victim scream. Craig testified that he heard the victim "moaning" during the encounter with Goodrich. Goodrich characterized the victim's account as an effort to justify what was "unfortunately an act of cheating on a boyfriend."

The trial court denied Goodrich's motion to strike and found him guilty of rape. The court noted that slight penetration was enough for the Commonwealth to prove its prima facie case. Especially persuasive was the fact that the victim "was screaming and crying and shaking afterwards." The court remarked that such "behavior is hard to fake." The court also mentioned that Goodrich had "changed his story at least twice."

*D. The sentencing hearing*

At the sentencing hearing, the trial court asked if either party had "any corrections" on the sentencing reports, including the psychosexual evaluation. Counsel for Goodrich noted only one correction in the presentence report relating to Goodrich's jail credit.

During the Commonwealth's sentencing argument, the prosecutor introduced some of Goodrich's statements to Detective Johnston referenced in the psychosexual evaluation, stating "I tried to wake her up. I rubbed my penis on her face, I put it in her mouth." Goodrich's counsel objected, arguing that those statements were ruled inadmissible at the February 2021 motion *in limine* hearing.[3] The court overruled Goodrich's objection as untimely, explaining that the psychosexual evaluation, which contained those statements, had come into evidence "without any objection."

---

[3] The Commonwealth's attorney at the sentencing hearing misattributed those statements to the doctor who performed Goodrich's psychosexual evaluation. The Commonwealth acknowledges on brief that the statements were made by Goodrich to Detective Johnston, the same statements at issue in the earlier motion *in limine*.

The court sentenced Goodrich to 15 years' incarceration with 5 years suspended. The court denied Goodrich's motion to set aside the sentence and grant a new sentencing hearing. Goodrich noted a timely appeal.

ANALYSIS

Goodrich argues that the trial court erred by failing to reject the victim's testimony as inherently incredible and by considering statements in the psychosexual report at sentencing that were excluded in the guilt phase. We are not persuaded.

*A. The evidence sufficed to find Goodrich guilty of rape.*

When reviewing the sufficiency of the evidence, "[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it." *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). Our inquiry is "whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

We "accept the trial court's determination of the credibility of witness testimony unless, 'as a matter of law, the testimony is inherently incredible.'" *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006) (quoting *Walker v. Commonwealth*, 258 Va. 54, 71 (1999)). Testimony is "incredible" if it is "so manifestly false that reasonable men ought not to believe it" or it is "shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ." *Perkins*, 295 Va. at 328 (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). Contradictory or inconsistent testimony does not in itself rise "to the level of being inherently incredible as a matter of law." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019).

A person who "has sexual intercourse with a complaining witness . . . through the use of the complaining witness's mental incapacity or physical helplessness . . . [is] guilty of rape."

Code § 18.2-61(A)(ii). To sustain a rape conviction, the prosecution must show "[p]enetration by a penis of a vagina." *Johnson v. Commonwealth*, 259 Va. 654, 682 (2000). Such penetration "may be established solely by the testimony of the victim unless such testimony is inherently incredible or so contrary to human experience or usual human behavior as to render it unworthy of belief." *Kehinde v. Commonwealth*, 1 Va. App. 342, 345 (1986). "[E]vidence of the condition, position, and proximity of the parties . . . may afford sufficient evidence of penetration." *Morrison v. Commonwealth*, 10 Va. App. 300, 301 (1990) (second alteration in original).

The victim's testimony contained so many plausible details that we cannot say it was inherently incredible. The victim woke up and felt a penis inside her vagina. She assumed it was her boyfriend Craig but quickly realized that it was Goodrich when she opened her eyes and saw Craig asleep next to her. The victim was lying on her left side as Goodrich penetrated her from behind. The sexual encounter was nonconsensual because the victim was asleep when it started and never consented to sex with Goodrich. *See, e.g.*, *Woodward v. Commonwealth*, 12 Va. App. 118, 120 (1991) (upholding the rape conviction when the victim awoke with the defendant "on top of her engaged in sexual intercourse"). "[L]ongstanding common law principles . . . recognize that a victim is unable to give consent for sexual contact while sleeping." *Conley v. Commonwealth*, 74 Va. App. 658, 677 (2022) (second alteration in original) (quoting *Nelson v. Commonwealth*, 73 Va. App. 617, 626 (2021)). Even crediting Goodrich's arguments that the victim was inconsistent about how much she had had to drink, what time they got to the hotel room, whether she was wearing clothes to bed, and what side of the bed she slept on, such testimonial inconsistencies were for the trial court to resolve. *Kelley*, 69 Va. App. at 626.

The differing details in Jamie and Craig's testimony also did not discredit the victim's account nor render it inherently incredible. Based on those witnesses' perception that the victim was "bent over like a dog" and "moaning," Goodrich argues that the victim simply panicked after getting caught having consensual sex with Goodrich, Craig's friend. But the trial court was "free to believe and disbelieve in part or in whole the testimony of any witness." *Smith v. Commonwealth*, 56 Va. App. 711, 720 (2010) (quoting *Rollston v. Commonwealth*, 11 Va. App. 535, 547 (1991)). And "the weight accorded the evidence [is a] matter[] *solely for the fact finder* who has the opportunity to see and hear that evidence as it is presented." *Poole v. Commonwealth*, 73 Va. App. 357, 368 (2021) (quoting *Perkins*, 295 Va. at 328).

"'[T]here can be no relief' in this Court if a witness testifies to facts 'which, if true, are sufficient' to support the conviction '[i]f the trier of the facts' bases its decision 'upon that testimony.'" *Kelley*, 69 Va. App. at 626 (alterations in original) (quoting *Smith*, 56 Va. App. at 718-19). As the factfinder, the trial court was entitled to resolve any discrepancies between the witnesses' accounts, as well as any inconsistencies within the victim's own testimony. Ultimately, the trial court found that the victim's account was credible. The victim's account of the incident showed that she was asleep when Goodrich, without her consent, penetrated her vagina with his penis. Thus, the victim's credible testimony was "'sufficient' to support the conviction." *Id.* (quoting *Smith*, 56 Va. App. at 718).

### B. The court did not abuse its sentencing discretion by refusing to exclude Goodrich's admission.

Goodrich argues that the trial court abused its discretion at the sentencing hearing when it allowed the Commonwealth to recite statements that were previously excluded during the guilt phase by a motion *in limine*. Among the "principal ways" a trial court can abuse its discretion is "when an irrelevant or improper factor is considered and given significant weight." *Lawlor v. Commonwealth*, 285 Va. 187, 213 (2013) (quoting *Landrum v. Chippenham & Johnston-Willis*

- 7 -

*Hosps., Inc.*, 282 Va. 346, 352 (2011)). But the scope of testimony permitted at sentencing is wide, and "the circumstances of the individual case . . . dictate what evidence [is] necessary and relevant, and from what sources it may be drawn." *Meekins v. Commonwealth*, 72 Va. App. 61, 68 (2020). In determining whether the trial court abused its discretion by admitting or refusing evidence at sentencing, we consider "only whether the record fairly supports the trial court's action." *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021).

The Commonwealth argues that Goodrich failed to timely object at sentencing when the trial court admitted the psychosexual evaluation, which contained Goodrich's admission to Detective Johnston that he had "rubbed [his] penis on [the victim's] face" and "put it in her mouth." Assuming without deciding that Goodrich's objection was preserved, we find it to be meritless.

A trial judge's ruling *in limine* excluding evidence during the guilt phase does not automatically exclude it from consideration by the sentencing judge. Sentencing judges are imbued with wide discretion to craft "a sentence that best effectuates" the goals of the criminal justice system. *Baldwin v. Commonwealth*, 69 Va. App. 75, 87 (2018). "For this reason, the admissibility of evidence during sentencing proceedings does not necessarily turn on whether that same evidence was admissible during the guilt phase of the trial." *Brown v. City of Danville*, 44 Va. App. 586, 607 (2004). Sentencing judges may consider "charges for which the accused has been indicted, but not convicted," along with "evidence of unadjudicated criminal activity." *Moses v. Commonwealth*, 27 Va. App. 293, 302 (1998). It was thus proper for the trial court during sentencing on the rape conviction to have considered Goodrich's admission that he had also put his penis in the victim's mouth when she was sleeping.

The earlier order *in limine* did not bar the trial court from considering that evidence at sentencing. To be sure, when the prosecution nolle prossed the sodomy charge, the trial court

granted Goodrich's motion *in limine* to preclude that evidence during the guilt phase of Goodrich's trial for rape.  The court said that the potential prejudice for the uncharged crime outweighed its probative value in showing whether Goodrich raped the victim.  But that evidence was plainly relevant at the sentencing stage.  And Goodrich offers no authority for the proposition that the order *in limine* at trial had to be given the same effect at sentencing.

CONCLUSION

We find no reason to disturb the trial court's finding that the evidence sufficed to convict Goodrich of rape.  Nor did the trial court abuse its discretion at sentencing in considering Goodrich's admission in the psychosexual report.

*Affirmed.*