SENIOR JUSTICE WHITING
delivered the opinion of the Court.
In this case we consider the admissibility of proffered expert opinions concerning the mental retardation of the defendant and the susceptibility of mentally retarded persons to suggestive police interrogation in connection with the defendant’s contention that his confession was unreliable.
*184 Livingston Pritchett, III, was indicted in Montgomery County for the capital murder and robbery of Estel Darnell Singleton, Sr., and for the use of a firearm in the commission of those two crimes. After a jury convicted him of first degree murder and of the remaining offenses, it recommended penitentiary sentences of life imprisonment for the murder conviction and several terms aggregating 13 years for the robbery and firearms convictions. Overruling various defense motions, the trial court entered judgment on the verdicts.
Pritchett appealed from his convictions to the Court of Appeals, contending that the trial court erred: (1) in admitting his confession because it was not voluntarily given and (2) in excluding expert testimony relating to his mental retardation. The Court of Appeals affirmed the convictions in an unpublished opinion. Pritchett v. Commonwealth, Record No. 1430-99-3 (December 12, 2000). We awarded Pritchett this appeal limited to the second issue.
At 8:00 a.m. on April 30, 1997, Singleton’s body was found with a single gunshot wound to his head in the picnic area of the Ironto Rest Stop on Interstate Highway 81 in Montgomery County. Singleton’s pockets had apparently been emptied and his wallet and other articles were found scattered near his body. Although no automatic teller machine (ATM) card was found, there was an ATM receipt from a local bank in the wallet.
Upon contacting the bank, a police investigator ascertained that there had been an attempt to use the ATM card two days after Singleton’s body was found. The bank also furnished the investigators with videotape from its ATM camera which showed the man who had attempted to use the ATM card. One of the investigators recognized the man as Pritchett. Pritchett was known to some of the investigators because he had been a witness in a prior murder case and occasionally he had paid friendly visits to some of the officers at their offices.
An investigator arranged to have Pritchett come to the State Police Headquarters in Salem by telling him that the investigator needed additional information concerning the prior case. The Commonwealth admits that this was a pretext; when Pritchett arrived, the questions eventually turned to the Singleton murder case.
Although the record does not reveal the contents of his initial statement to the investigators, Pritchett testified at trial that he had not been in the rest area where Singleton’s body was found and he denied killing Singleton. Pritchett admitted, however, that he attempted to use Singleton’s ATM card and that he used one of the *185 credit cards. Pritchett claimed that he found these and other articles of personal property on the ground near a supermarket located some distance from the rest stop. Investigators had found personal property belonging to Singleton in Pritchett’s motel room.
According to the testimony of Investigator Jerry Humphreys, during the investigative interviews Pritchett denied killing Singleton until Humphreys asked: “[Wjhat went so terribly wrong that day that you had to kill Mr. Singleton at the Ironto Rest Area[?]” Describing Pritchett’s response, Humphreys testified:
[H]e didn’t say anything at first, and then he said with anger in his voice, [“]he was [a] faggot, he came to the bathroom, pulled a gun and call me a nigger. I ran, we struggled, the gun went off[”] and he maintained it was an accident when Mr. Singleton got shot.
Pritchett later proffered the testimony of two witnesses, both of whom qualified as experts in the field of psychology. Dr. Bernice Marcopulos, a clinical neuropsychologist, testified that tests she administered to Pritchett indicated that his intelligence quotient (IQ) was 69, placing Pritchett in the range of mildly retarded persons. Both she and Dr. Stephen Herrick, a forensic psychologist, testified concerning Pritchett’s limited communication skills.
Dr. Herrick also testified that studies in his field of expertise indicated two factors which characterize people who “may be prone . . . to false confessions, and those are [1] compliance, people [who] generally day to day go along with [authority] figures, and [2] interrogative suggestibility which is an aspect of where in the moment that somebody is asking leading questions that they will go along with it.” Dr. Herrick opined that “both these factors correlate very highly with people [who] have low I.Q.[s].”
Dr. Herrick further described a brief test he administered to Pritchett by reading him a story which Pritchett was asked to remember. The story was contained in a paragraph of approximately 40 words. Dr. Herrick then asked a series of 25 questions, 20 of which were leading. All the questions purported to reflect what was contained in the paragraph but the information in some of Dr. Herrick’s leading questions was not contained in the story. Yet, Pritchett’s “yes” or “no” answers to those questions indicated that Pritchett believed he knew that information. When Pritchett was told that he had not answered a question correctly and that h¿ needed to try to *186 answer as best he could, Dr. Herrick testified that Pritchett “switched his answers thinking from the negative feedback that I was not happy with him so therefore . . . not only [is he] answering questions that weren’t really in the story, but now he’s changing his answers based on that slight negative feedback that I gave him.”
Further, in describing Pritchett’s limited communication skills, his prior friendly relations with the police, and other background information, Dr. Herrick also testified:
... I think he just went along with what they said, and even at the point of asking to . . . contact his mother, or whatever, and got refusals[; he] basically was just told no. Well, he’s not the type that’s going to break through the doorway when an officer tells him no[;] he’s going to sit and listen to him.
After hearing and considering the proffer of the testimony of the two experts, the trial court ruled that “such testimony would invade the province of the jury as to the ultimate issue of intent [when the alleged crime was committed],” and refused to permit any of it to be presented to the jury. The Court of Appeals approved this ruling on the ground that there was no abuse of the trial court’s discretion in excluding this evidence.
On appeal, Pritchett contends that the evidence was admissible to assist the jury in assessing the reliability of his confession, which conflicted with his trial testimony. The Commonwealth responds that the trial court did not abuse its discretion in excluding the evidence because “the average juror” understands the issues presented by the proffer; thus expert opinion on the issues is inadmissable.
While the court has the duty to determine whether Pritchett’s confession was voluntary, it is the jury’s duty to consider its reliability. Crane v. Kentucky, 476 U.S. 683, 688 (1986); Williams v. Commonwealth, 234 Va. 168, 175, 360 S.E.2d 361, 365 (1987), cert. denied, 484 U.S. 1020 (1988). “[T]he physical and psychological environment that yielded the confession can ... be of substantial relevance to the ultimate factual issue of the defendant’s guilt or innocence.” Crane, 476 U.S. at 689. Under Crane, the Commonwealth and Pritchett were each entitled to introduce admissible evidence to assist the jury in determining whether the confession was reliable.
Expert testimony is admissible if the area of expertise to which the expert will testify is not within the range of the common *187 experience of the jury. Coppola v. Commonwealth, 220 Va. 243, 252, 257 S.E.2d 797, 803 (1979), cert. denied, 444 U.S. 1103 (1980). Given the trial court’s conclusion “that mental retardation is not within the range of common experience of most juries,” expert testimony on certain aspects of mental retardation should be admissible to assist the jury in evaluating the reliability of his confession. But the trial court rejected the expert’s testimony on the ground that it “would invade the province of the jury as to the ultimate issue of intent.”*
An expert witness may not express an opinion as to the veracity of a witness because such testimony improperly invades the province of the jury to determine the reliability of a witness. Fitzgerald v. Commonwealth, 223 Va. 615, 630, 292 S.E.2d 798, 806 (1982), cert. denied, 459 U.S. 1288 (1983). Dr. Herrick’s broad statement that Pritchett “just went along with what they said” could be construed as an evaluation of the unreliability of Pritchett’s confession and a comment on the truth of that part of Pritchett’s trial testimony which differed from his confession. So constmed, it was an inadmissible statement regarding Pritchett’s veracity which the trial court correctly excluded as an invasion of the province of the jury. Coppola, 220 Va. at 252-53, 257 S.E.2d at 803-04.
But this Court has previously held that an expert may testify to a witness’s or defendant’s mental disorder and the hypothetical effect of that disorder on a person in the witness’s or defendant’s situation, so long as the expert does not opine on the truth of the statement at issue. Fitzgerald, 223 Va. at 629-30, 292 S.E.2d at 806; Coppola, 220 Va. at 252-53, 257 S.E.2d at 803-04. In the present case, the balance of the expert testimony did not characterize the truth of the statement of any witness - it merely presented information on subjects unfamiliar to the jury that would assist it in determining the reliability of Pritchett’s confession. For that reason, this testimony should have been admitted.
Nevertheless, the Commonwealth argues that any such error was harmless. We do not agree with the Commonwealth. If the jury concluded that significant portions of the confession were not reliable, it might not have been willing to convict Pritchett solely on the circumstantial evidence presented by the Commonwealth, which was *188 in sharp conflict with his denial of having killed Singleton. Given this conflict in the evidence, we cannot say that the error was harmless beyond a reasonable doubt.
Accordingly, we will affirm the case in part, reverse it in part, and remand it to the Court of Appeals with instructions to remand the case for a new trial.

Affirmed in part, reversed in part, and remanded.

*189 VIRGINIA:
In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on Thursday, the 17th day of January, 2002.
Aaron E. Williams, Appellant,
against Record No. 012417 Circuit Court Nos. CR0000183-00 and CR00001893-02
Commonwealth of Virginia, Appellee.
Upon an order of transfer entered by the Court of Appeals of Virginia on the 30th day of October, 2001.
Upon consideration of the record, briefs, and argument of counsel, the Court is of opinion that there is error in the order of the Court of Appeals transferring the present appeal to this Court under Code § 8.01-677.1.
Code § 17.1-406(A) gives the Court of Appeals appellate criminal jurisdiction over “any final conviction in a circuit court of ... a crime.” Williams’ request to withdraw his guilty pleas under Code § 19.2-296 after the final order of conviction had been entered constituted, in part, a request that the circuit court set aside the judgment of conviction.
Under Code § 19.2-296, a circuit court may set aside a conviction and permit withdrawal of a guilty plea within 21 days after entry of the final judgment order during the period the court retains jurisdiction over the judgment of conviction. Because a motion to withdraw a guilty plea under Code § 19.2-296 is designed by statute to be filed and disposed of while the circuit court retains jurisdiction over the case, the motion is criminal in nature. Such motion does not challenge the jurisdiction of the circuit court, as did the motion to vacate filed in Commonwealth v. Southerly, 262 Va. 294, 299, 551 S.E.2d 650, 653 (2001). Thus, Williams’ appeal is subject to the criminal appellate jurisdiction of the Court of Appeals under Code § 17.1-406(A). Southerly, 262 Va. at 299, 551 S.E.2d at 653.
*190 Accordingly, the transfer order of the Court of Appeals is reversed and the case is returned to the Court for consideration of Williams’ appeal.
It is ordered that the Circuit Court of the City of Norfolk allow counsel for the appellant a fee of $725 for services rendered the appellant on this appeal, in addition to counsel’s costs and necessary direct out-of-pocket expenses.
This order shall be certified to the Court of Appeals of Virginia and to the Circuit Court of the City of Norfolk and shall be published in the Virginia Reports.

 The trial court accepted the Commonwealth’s argument at trial that the proffered testimony dealt with Pritchett’s mental capacity at the time the alleged crimes occurred. On appeal, the Commonwealth correctly perceived that the testimony was directed to Pritchett’s mental capacity at the time of his alleged confession.