COURT OF APPEALS OF VIRGINIA


Present:    Judges Humphreys, McClanahan and Senior Judge Bumgardner
Argued at Richmond, Virginia


ROXANNE ELIZABETH DOWNS

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1604-06-1                      JUDGE ROBERT J. HUMPHREYS
                                                    MAY 6, 2008
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                              Lydia Calvert Taylor, Judge

            Joseph R. Winston, Special Appellate Counsel (Stacie A. Cass,
            Assistant Appellate Defender; Office of the Appellate Defender, on
            briefs), for appellant.

            Eugene Murphy, Senior Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        Roxanne Elizabeth Downs ("Downs") appeals her conviction for murder in the first

degree, in violation of Code § 18.2-32.  Downs claims that the trial court abused its discretion by

refusing to allow an expert to testify regarding her mental capacity at the time that she confessed

to killing her daughter.  Downs does not argue that her confession was involuntary.  Rather, she

claims that she is the type of person that is susceptible to making a false confession and that the

trial court should have allowed expert testimony to that effect.  For the following reasons, we

affirm the decision of the trial court.

                                          Analysis

        On appeal, Downs argues that the trial court erred in refusing to allow Dr. Susan Garvey

to testify regarding Downs' "suggestibility and a psychological diagnosis."  "The admission of

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

expert testimony is committed to the sound discretion of the trial judge, and we will reverse a trial court's decision only where that court has abused its discretion." Brown v. Corbin, 244 Va. 528, 531, 423 S.E.2d 176, 178 (1992). It is well settled that "questions of credibility, whether of a witness or of a confession, are for the jury." Crane v. Kentucky, 476 U.S. 683, 689 (1986). "An expert witness may not express an opinion as to the veracity of a witness because such testimony improperly invades the province of the jury to determine the reliability of a witness." Pritchett v. Commonwealth, 263 Va. 182, 187, 557 S.E.2d 205, 208 (2002). Expert testimony is admissible if the area of expertise to which the expert will testify is not within the range of the common experience of the jury. Id. at 186-87, 557 S.E.2d at 208.

> However, expert testimony concerning matters of common knowledge or matters as to which the jury are as competent to form an opinion as the witness is inadmissible. Where the facts and circumstances shown in evidence are such that men of ordinary intelligence are capable of comprehending them, forming an intelligent opinion about them, and drawing their own conclusions therefrom, the opinion of an expert based upon such facts and circumstances is inadmissible.

Coppola v. Commonwealth, 220 Va. 243, 252, 257 S.E.2d 797, 803-04 (1979).

On the second day of Downs' three-day trial, Downs called Dr. Solomon Fulero, a nationally recognized expert in the area of false confessions, as an expert witness. Dr. Fulero testified about factors and circumstances that can lead to a false confession and described the personality characteristics of a person likely to confess to a crime they did not commit. The court only allowed Dr. Fulero to testify generally about false confessions and did not allow Dr. Fulero to testify about Downs specifically because he had never examined her.

On the third day of her trial, Downs sought to have Dr. Garvey testify as a second expert. Dr. Garvey is a psychologist who had examined Downs prior to trial in order to determine whether she was competent to stand trial. Although Dr. Garvey had never previously qualified as an expert on false confessions, her report concluded that Downs had "personality

characteristics . . . consistent with the type of individual who would be prone to making a false confession." Based on her prior examination of Downs, Dr. Garvey intended to testify about two of the "false confession factors" identified by Dr. Fulero, specifically, "suggestibility and a psychological diagnosis." Downs claims that Dr. Garvey's testimony was necessary to "connect[] her own experience to the science of false confessions."

The trial court disagreed, finding that Dr. Garvey's testimony was not "essential" because "the personality of [Downs] is sufficiently before the jury to argue [the applicability of the factors identified by Dr. Fulero]." The trial court held further that the jury did not need "expertise" to assist them in assessing whether Downs had the type of personality that Dr. Fulero described as being susceptible to giving a false confession. We agree with the trial court. Although the reasons why a person would confess to a crime they did not commit may not be "within the range of the common experience of the jury," Pritchett, 263 Va. at 187, 557 S.E.2d at 208, once those reasons are identified and explained, "men of ordinary intelligence," Coppola, 220 Va. at 252, 257 S.E.2d at 804, do not need a second expert to tell them whether those reasons apply under the facts of this case.

The facts here are significantly distinct from the facts of Pritchett, the leading Virginia case on the admissibility of expert testimony regarding false confessions. In Pritchett, the Supreme Court reversed a trial court's denial of a mentally retarded defendant's request for expert testimony regarding false confessions. The trial court had denied the expert testimony even though it had specifically found that "'mental retardation is *not within the range of common experience of most juries*.'" Pritchett, 263 Va. at 187, 557 S.E.2d at 208 (emphasis added). In reversing, the Supreme Court explained that "[e]xpert testimony *is* admissible if the area of expertise to which the expert will testify is not within the range of the common experience of the jury." Id. (emphasis added). Thus, the trial court's finding that mental retardation was not

- 3 -

within the common experience of juries made its admission allowable and the Supreme Court held that the trial court erred by refusing it.

Here, the trial court made no such finding. In fact, the trial court in this case specifically found that "expertise" was *unnecessary* for the jury to understand Downs' mental state. The trial court had already allowed Dr. Fulero, a recognized expert in the psychology of false confessions, to testify regarding the personality characteristics of a person prone to giving a false confession. The trial court found as fact that the jury could understand and apply Dr. Fulero's testimony without further assistance from Dr. Garvey. Dr. Garvey was admittedly not an expert on false confessions and had only examined Downs to determine whether she was competent to stand trial. Dr. Garvey did not examine Downs specifically for the purpose of determining whether she was susceptible to making false confessions. Downs' only proffer with respect to Dr. Garvey's testimony was the pretrial report and a bare assertion that Dr. Garvey would testify to "suggestibility and a psychological diagnosis." Based on such a limited proffer and Dr. Garvey's admitted lack of specialized expertise in the area Dr. Fulero testified about, the trial court could reasonably conclude that Dr. Garvey's testimony would be neither helpful nor necessary for the jury to evaluate Downs' personality with respect to the characteristics described by Dr. Fulero.

A finding that the expert testimony concerns matters that cannot be understood by "men of ordinary intelligence," Pritchett, 263 Va. at 186, 557 S.E.2d at 208, is a necessary predicate to the introduction of expert testimony. See Coppola, 220 Va. at 252, 257 S.E.2d at 804. Here, the trial court specifically found that Downs' personality could be understood by men of ordinary intelligence; that it could be understood without "expertise." Thus, the trial court properly excluded Dr. Garvey's testimony in this case.

Conclusion

Based on the foregoing, we hold that the trial court did not abuse its discretion by refusing to allow expert testimony on a matter within the common experience and understanding of the jury. Therefore, we affirm the decision of the trial court.

<u>Affirmed.</u>