COURT OF APPEALS OF VIRGINIA


Present: Judges Frank, McCullough and Senior Judge Annunziata
Argued at Alexandria, Virginia


SHEREEN JAOUNI

v.      Record No. 0168-11-4

SAID SAMIR IBRAHIM SALAH                    MEMORANDUM OPINION* BY
                                            JUDGE STEPHEN R. McCULLOUGH
SHEREEN JAOUNI                              JANUARY 24, 2012

v.      Record No. 0378-11-4

SAID SAMIR IBRAHIM SALAH


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jane Marum Roush, Judge

Patricia M. McDermott; Catherine L. Fagg (Matthew D. Slater;
David C. Smith; Katherine C. Fennell; Darlene R. Langley, Guardian
*ad litem* for minor child; Cleary Gottlieb Steen & Hamilton, LLP;
Arif & Associates, P.C., on briefs), for appellant.

Richard P. Buzan (Richard P. Buzan, P.C., on brief), for appellee.


Shereen Jaouni ("mother") appeals from an order of the Circuit Court of Fairfax County

refusing to award a protective order for her daughter and imposing attorney's fees. Mother

contends that the trial court erred in (1) permitting an expert witness to testify, (2) allowing Said

Samir Ibrahim Salah ("father") to play a videotape depicting his interaction with daughter,

(3) refusing to credit the testimony of their daughter N. and the daughter's counselor, (4) finding the

---

* These consolidated cases involve the application of settled legal principles to a discrete
set of facts. Therefore, pursuant to Code § 17.1-413, this opinion is not designated for
publication.

evidence insufficient to issue the protective order, and (5) imposing attorney's fees. For the reasons noted below, we affirm in part and reverse in part.

BACKGROUND

Mother and father were divorced when their daughter N. was an infant. In March of 2010, mother sought a protective order from the Fairfax County Juvenile and Domestic Relations District Court on the ground that father was physically abusing N. The juvenile court awarded mother a protective order for six months. Father appealed that order to the circuit court.

At the hearing in circuit court, mother testified that her daughter did not have bruises or marks on her when she left mother's home, but that such bruises could be found upon her after visits with father. At one point, N. returned from a visit with her father with a black eye. Mother said she observed bruises on her daughter approximately once per month, although she said the bruises could be more frequent. Father had visitation every weekend. Mother documented these bruises with extensive photographs. She also testified that she took her daughter to the hospital after she suffered from severe sunburn following one of the visits with her father.

N., who was eight years old at the time of the hearing in circuit court, testified that her father beat her. She said some of those beatings were with a lacrosse stick. The court also accepted into evidence video testimony showing N.'s interaction with her siblings and her father.

Elizabeth Gordon, N.'s therapist, testified on mother's behalf. Gordon was employed by The House of Ruth, a private non-profit organization that focuses on domestic violence prevention, treatment, and advocacy. In addition to specialized training, Gordon received a master's degree in clinical counseling from Johns Hopkins University. She explained that although she is eligible for licensure, she is not licensed. A license is not required for her work. Gordon testified that N. is very anxious about visitation with her father, and in particular she is fearful of physical punishment "when she does something." Punishments include being hit,

pinched, or having her hair pulled. N. reported to Gordon that N.'s father would come into the bathroom and touch her private areas to wash her afterwards, which made N. uncomfortable using the bathroom around him. Gordon acknowledged that she essentially based her opinion on statements by N.

Father testified that he loved his daughter, and he denied that he physically abused her. According to father, the bruises N. experienced stemmed from playing with the many other children who are present during visitation. His account was corroborated by his current wife, his sister, and his sister-in-law. Father and his witnesses testified that when N. needed discipline, father would use time outs rather than physical punishment.

With respect to the severe sunburn N. suffered on one occasion, father's witnesses surmised that the suntan lotion applied to N. may have washed off when the children were spraying each other with a hose. Some of the other children who played with N. also were sunburned that day.

Father and the witnesses he called denied that father accompanied N. to the bathroom. Instead, she went by herself. Father testified that he has not accompanied N. to the restroom since she was four years old. Several witnesses noted that although N. initially is apprehensive during her visits with her father, she soon changed her demeanor and enjoyed the visits.

Father introduced over mother's objection a videotape showing excerpts of N. during father's visitation. Counsel objected on the basis that the videos were edited, they were not the best evidence, and they were irrelevant because they did not record an entire visitation. Counsel further noted that these videos were self-serving and hearsay. The trial court overruled the objection.

Dr. Christopher H. Lane was called as a witness by father. Dr. Lane initially was appointed by the court as an expert to perform a child custody evaluation in a separate case.

When father designated Dr. Lane as an expert witness for the protective order hearing, mother objected on the basis that

> Dr. Lane has not been appointed in this case, nor has he been agreed upon to serve as a custody evaluator in this case, and use of his report in this case would therefore be in excess of any consent she granted, and therefore contrary to physician-patient privilege, to the extent he testifies to impressions resulting from his access to Ms. Jaouni or the child. Any testimony on behalf of a party would compromise the impartiality required of the evaluator. His report is not relevant, not likely to assist the factfinder, and excludes issues underlying this case.

She further objected to Dr. Lane's testimony on "competency grounds [and] lack of personal knowledge."

The guardian *ad litem* for N. also objected to Dr. Lane's testimony, citing

> [h]earsay, lack of personal knowledge, relevance, lack of foundation, materiality. . . . Witness, by his own admission, has no information as to how the child's injuries occurred and did not extensively explore these issues with the parties. Witness was engaged to perform a custody and visitation evaluation, and was not engaged to determine the issues before the court on the protective order.

The steps Dr. Lane took to investigate the family dynamic are listed in his final report, which is included in the trial court record[1]:

> Evaluation Components:
>
> 3/31/10 – Interview with father (1 hour)
> 4/13/10 – Interview with father (45 min.)
> 4/14/10 – Interview and psychological testing of mother (2.5 hrs.)
> 4/16/10 – Interview and psychological testing of father (1 hour)
> 4/21/10 – Interview and psychological testing of father (2 hours)
> 4/23/10 – Interview and psychological testing of mother (2.5 hours)

---

[1] The spelling of some of the names listed differs throughout the record. Dr. Lane's spelling of these names is quoted here verbatim.

4/29/10 – Interview and psychological testing of father (2 hours)
5/27/10 – Interview with father (1 hour)
6/18/10 – Interview with mother (2.5 hours)
6/23/10 – Interview with child (2 hours)
6/29/10 – Interview with father (75 min.)
7/6/10  – Interview with child (1 hour)
7/7/10  – Joint father-child interview (1.5 hours)
7/8/10  – Joint mother-child interview (1 hour)
7/9/10  – Interview and psychological testing of child (2 hours)
7/15/10 – Interview with father (2 hours)
7/17/10 – Exchange Observation (1 hour)
7/17/10 – Joint father-child interview (1.5 hours)
7/29/10 – Interview with father (2 hours)
8/3/10  – Interview with mother (2.5 hours)
8/5/10  – Interview with mother (2 hours)
8/10/10 – Interview with father (2 hours)
8/17/10 – Interview with mother (3 hours)
8/18/10 – Interview with child (2 hours)
8/26/10 – Interview with father (3 hours)
9/11/10 – Home Visit/Family Observation – father (2 hours)
9/20/10 – Home Visit/Family Observation – mother (2 hours)
9/20/10 – Interview with father (2.75 hours)
9/21/10 – Interview with child (1.5 hours)
9/22/10 – Interview with mother (2 hours)
9/23/10 – Interview with father (45 min.)
9/23/10 – Interview with mother (45 min.)

The following battery of psychological tests was administered to each parent:

Minnesota Multiphasic Personality Inventory – 2 (MMPI-2)
Millon Clinical Multiaxial Inventory – III (MCMI-III)
Substance Abuse Subtle Screening Inventory (SASSI-3)
Paulhus Deception Scales
House-Tree-Human Figure Drawings
Kinetic Family Drawing
Rotter Incomplete Sentence Blank
Personal Problems Checklist for Adults
Parenting Stress Index (PSI)
Parent Awareness Skills Survey (PASS)

The following psychological tests were administered to the child or were completed for her by each parent:

Bricklin Perceptual Scales
Children's Problem Checklist
Clinical Assessment of Behavior – Long Form (CAB)

Each parent was asked to complete the following questionnaires:

Brief Health Information Form
Chemical Use Survey
Parent's Family/Personal History Questionnaire
Child History Questionnaire
Access to Adult Strength Parent Self-Report Data
Custody Issue Questionnaire
Joint Custody Issue Questionnaire

Additionally, each parent was given the opportunity to provide the evaluator with supporting documents. They each did so. These documents included both Virginia and Maryland legal records, correspondence, photographs, videotapes, communications, personal notes, professional articles, and other material considered by them to be relevant to existing issues.

The following individuals were interviewed in order to provide information, observations, and perspective relative to this matter:

Darlene Langley, Esq. – guardian *ad litem*
Elizabeth Gordon, MS (House of Ruth) – child's therapist
Saly Hassan – child's stepmother/transition supervisor
Sarrah Salah – child's paternal aunt and visitation supervisor
Dr. Rurnana Kazmi – family friend
Dr. Rasha Saleem – friend of mother/child
Dr. Ahmed Saleem – friend of mother/child
Mona El Dadah – friend of mother/child
Linda Williams Bright – friend/former colleague of mother
Moktar Hussein – friend/former mentor of mother
Mona Salah – child's paternal aunt
Jenise Roach – father's neighbor

On the day of the hearing, counsel for mother again objected to Dr. Lane's testimony, citing the fact that he was not appointed to provide an opinion regarding the protective order. Because Dr. Lane was appointed in the separate context of evaluating custody and visitation, counsel argued his findings would not be "helpful in a protective order case."

The trial court overruled the objections, stating that Dr. Lane would be limited in his testimony to a determination of whether family abuse had occurred, and the risk of abuse. The court further stated that if he strayed beyond this area, "we can take it up on a case-by-case basis."

During his opening statement, counsel for father stated that

> Dr. Lane does say that the child will make negative reports, but a lot of that is based upon her desire to protect her mother from suffering from rather severe depression . . . and that the daughter may be fabricating these events in order to protect her mother was some of the opinions that Dr. Lane would offer.

Counsel for mother objected, noting that "those are the opinions that are excluded because he is not offering opinions as to the credibility of the child or the witness. He is offering his opinions as to . . . risk of abuse." The trial court overruled the objection, stating that this is "just opening statement" and, therefore, just "a projection of what counsel thinks the evidence will be."

Curiously, Dr. Lane never was qualified as an expert. He testified that, although he could not be one hundred percent sure, he did not believe that the abuse had taken place. He explained that he arrived at this view because he did not think N. was telling the truth. Dr. Lane concluded that N. "feels bound to say things that achieves her end and her end is to remain with her mom. I think she feels protective of her mom. I think she doesn't trust her dad. I think he is more of a disciplinarian and sterner and firmer than her [mother]." No objection was lodged to this testimony. Dr. Lane acknowledged that N. reported to him that her father hit her, that he would not take care of splinters she received, and would come into the bathroom and touch her "private areas." Dr. Lane contrasted the uniformly negative statements N. made about her father with the positive reaction she exhibited to her father during their interaction. Dr. Lane concluded that N.'s statements were colored by a desire to avoid unhappiness for her mother. He also noted that

while father had difficulties controlling his temper, he does exercise reasonable self-control and there is no risk of physical abuse.

Towards the conclusion of Dr. Lane's testimony, counsel asked

> And with respect to any role the mother has had in influencing the daughter to make allegations did your work in the case and your tests and interviews you've made give you any insight into what, if any, role the mother has played in influencing the child to make the incorrect statements or alleged abuse against the father?

Counsel for mother objected, arguing that "[h]is testimony . . . is going to be to the potential of abuse or risk of abuse. And his determination of the mother and the mother's credibility and the child's credibility, really those are issues for the Court." The court overruled the objection.

Dr. Lane then answered the question, stating that

> I think this is a child who is very identified with her mother's perceptions and emotions. I think she sees her mother as . . . put upon by her father, as victimized by her father and limited by her father in terms of finances and in terms of happiness, in terms of moving ahead with her life.

In effect, N. acts as a "lobby[ist] for her mother's position."

The trial court declined to grant a protective order. The court found that the plaintiff had not "shown by a preponderance of the evidence that the father has committed any acts of family abuse or that a protective order is needed to protect the health and safety of the child." The court found "Dr. Lane's testimony and his opinions to be quite credible and thought out and well investigated." The court agreed with Dr. Lane that N. had identified excessively with her mother and feels responsible for her mother's happiness. The court found Ms. Gordon's opinion less credible.

At the conclusion of its findings, the trial court ordered mother "to pay $14,000 of the father's attorney's fees within 90 days."[2] Three days after the hearing, counsel for mother filed a motion to reconsider the award of fees, arguing that the award was unwarranted. Counsel noted that the protective order claim was not frivolous, was made in good faith, and that mother was acting to protect her child who had repeatedly stated that she was abused by her father. The motion also urged the court to reconsider because the court had not considered mother's financial ability to pay the fees, as required by law. The trial court denied the motion.

## ANALYSIS

### I. DR. LANE'S TESTIMONY

Mother argues that the trial court erred in a number of particulars in admitting Dr. Lane's testimony. Mother first contends that Dr. Lane impermissibly commented on the veracity of a witness when he expressed an opinion that N. was not being truthful. Under settled Virginia law, an expert may not testify concerning the credibility of a witness. See, e.g., Pritchett v. Commonwealth, 263 Va. 182, 187, 557 S.E.2d 205, 208 (2002). We find this issue was not timely raised at trial and, therefore, is waived on appeal.

Rule 5A:18 states that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling." The point of this rule is "to afford the trial judge a fair opportunity to rule intelligently on objections while there is still an opportunity to correct errors in the trial court and to protect the trial court from litigants asserting error on appeal that had not been raised at trial." Vasquez v. Mabini, 269 Va. 155, 163, 606 S.E.2d 809, 813 (2005) (citation omitted). The rule "was adopted for the very purpose of preventing the setting of traps for trial courts." Keeny v. Commonwealth, 147 Va.

---

[2] Counsel for father had filed an affidavit stating that "the invoiced attorney's fees and costs . . . to Mr. Salah that relate to the prosecution and defense of the April 9, 2010 order are $14,332.79." The affidavit was supported by extensive billing records.

678, 690, 137 S.E. 478, 482 (1927). "In order to be considered on appeal, an objection must be timely made and the grounds stated with specificity. . . . To be timely, an objection must be made when the occasion arises – at the time the evidence is offered or the statement is made." Marlowe v. Commonwealth, 2 Va. App. 619, 621, 347 S.E.2d 167, 168 (1986); see also Harward v. Commonwealth, 5 Va. App. 468, 473-74, 364 S.E.2d 511, 513 (1988).

Mother's objection prior to trial did not raise the issue of any impermissible comments by Dr. Lane on a witness' credibility, and when the issue was raised at trial, the objection was untimely.[3] Prior to trial and in a motion *in limine* heard on the morning of trial, mother certainly objected to Dr. Lane's testimony. These objections, however, were not grounded on the fact that Dr. Lane would comment on the veracity of a witness. Counsel also objected during the opening statement offered by father's counsel, but the gravamen of that objection was that testimony by Dr. Lane about the credibility of the child would be beyond the scope of the testimony permitted by the trial court. Counsel did not argue that this testimony would impermissibly invade the province of the fact finder. Moreover, the trial court noted that this was simply opening statement. To preserve the point for appellate review, it was incumbent on counsel to timely object. Counsel did not do so.

Near the conclusion of Dr. Lane's testimony, counsel did object to any testimony addressing mother's and child's credibility, noting that the credibility of witnesses was an issue for the fact finder. The objection at that point certainly was specific enough, but it came too late. Marlowe, 2 Va. App. at 621, 347 S.E.2d at 168. Moreover, at that point, Dr. Lane had expressed at length his opinion as to N.'s credibility. Therefore, any error by the trial court in overruling this late objection would have had no impact on the trial court's conclusions. See Andrews v. Creacey, 56 Va. App. 606, 625, 696 S.E.2d 218, 227 (2010) ("'If, when all is said and done, [it is

---

[3] We note parenthetically that counsel on appeal did not represent mother at trial.

clear] that the error did not influence the [fact finder], or had but slight effect, . . . the judgment should stand.'" (quoting Clay v. Commonwalth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001))).

The next assignment of error challenges the trial court's decision to permit Dr. Lane to testify as to whether family abuse occurred. Mother argues that Dr. Lane did not adequately investigate all of the allegations of child abuse at issue in this case. In his motion *in limine* to exclude Dr. Lane's testimony, counsel for mother quoted a paragraph from Dr. Lane's final report in the child custody case as a basis for excluding his testimony. That paragraph provides that

> Photographs exist of seeming bruising, scratching, sunburn, splinters. This evaluation credits these and has no particular insight into how *each occurred*. This evaluation finds that risk of abuse, however, is not the most appropriate guide in crafting a custodial schedule.

(Emphasis added). During his testimony, Dr. Lane acknowledged that he wrote in his *preliminary* report that "not *all* allegations made regarding a suspected pattern of bruising, pinching, inappropriate punishment, unfair treatment, or neglect can be adequately investigated in an evaluation of this type or subjected to sufficient scrutiny to either confirm or deny their truthfulness." (Emphasis added).

At trial and on appeal, mother also argues that Dr. Lane's testimony should have been excluded because the conditions at the time of his evaluation differed from the conditions relevant to the circuit court's ruling. Mother notes that the period of time during which Dr. Lane evaluated the child was not the same period of time during which the abuse is alleged to have occurred. As a consequence, counsel argued, Dr. Lane's testimony would not assist the fact finder.

- 11 -

"Where the admissibility of expert testimony is challenged on appeal, the standard of review is whether the trial court abused its discretion." Currie v. Commonwealth, 30 Va. App. 58, 64, 515 S.E.2d 335, 338 (1999). Here, the trial court committed no abuse of discretion in declining to exclude Dr. Lane's testimony, from the outset, *in toto*. In ruling as it did, the trial court had before it a detailed report signed by a licensed clinical psychologist who had administered a battery of tests to father, mother, and to N., who spoke at length with many individuals, and who considered an extensive range of materials provided by the parties. Even if Dr. Lane's investigation took place after the juvenile court entered a protective order, his investigation was not limited to that time frame. His anticipated expertise, and his detailed investigation, certainly presented the prospect of relevant evidence. Likewise, the fact that he did not investigate the origin of every single bruise did not render his testimony speculative or based on an insufficient factual foundation.

Finally, with regard to mother's argument that the conditions had changed with the requirement of supervised visitation, it is true that the existence of a protective order and of supervised visitation would to some extent alter the dynamic between father and child. Nevertheless, Dr. Lane's extensive investigation and testing supplied an ample basis from which the trial court could conclude that his testimony was relevant and admissible. Indeed, mother tendered the testimony of N.'s counselor as an expert. Ms. Gordon's involvement did not begin until April 2010. Ms. Gordon's factual investigation was nowhere near as thorough as that conducted by Dr. Lane. Mother obviously considered Gordon's testimony relevant to the fact finder. The trial court did not err in reaching the same conclusion with respect to Dr. Lane.

Ultimately, the fact that Dr. Lane's testimony may have been subject to impeachment on one or more grounds did not render his testimony irrelevant and inadmissible. Such matters

would instead go to the weight given to his testimony.  In short, under the deferential standard of review in evidentiary matters, we find no abuse of discretion.

Finally, mother argues that Dr. Lane should not have been permitted to testify as an expert on the risk of family abuse in light of the absence of record evidence as to his education, qualifications, or experience.  Mother is correct that Dr. Lane was never qualified as an expert.  However, mother never objected on this basis in the trial court.  Although she objected pre-trial on the ground that he was appointed for a different purpose, namely, to conduct a custody evaluation, in no sense can this objection be read as raising the issue of the failure to qualify him as an expert at trial.  Therefore, this argument is waived.  See Rule 5A:18.

## II.  WITNESS CREDIBILITY AND THE REFUSAL OF THE TRIAL COURT TO GRANT THE PROTECTIVE ORDER

### A.  The trial court's assessment of N.'s credibility

Mother assigns error to the trial court's refusal to credit N.'s testimony, contending that her testimony was "supported by numerous facts in the record."  We decline the invitation to reweigh N.'s testimony.  Under settled law, "[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented."  Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).  The trial court found that N.'s testimony about the abuse was likely motivated by her desire to protect her mother and to ensure her mother's happiness.  The court noted that N.'s mother and father separated very soon after she was born and they divorced when she was an infant. Witnesses for father explained the origin of the bruises and other injuries N. suffered, and the trial court accepted this account.  Certainly, it is not unusual for a child to sustain bruises when playing with siblings.  Even if the testimony of father's witnesses did not account for every single bruise, or suffered from some inconsistencies, that would not render their account incredible as a matter of law.  Certainly, the injuries N. suffered were not so

- 13 -

catastrophic or anomalous that father's explanation of their occurrence was inherently incredible. Viewing the evidence in its totality, and deferring, as we must, to the credibility determinations of the trial court, we find no basis for reversal.

## B.  The trial court's assessment of the credibility of Ms. Gordon

Mother argues in her seventh assignment of error that the trial court erred when it refused to credit the testimony of Elizabeth Gordon.  The trial court specifically addressed Gordon's testimony.  The court found Ms. Gordon's opinion "certainly not as well researched or thought out as Dr. Lane's."  The court further found "hard to ignore" the fact that Gordon was not a licensed therapist.  Furthermore, the trial court had to weigh Ms. Gordon's testimony in the context of all of the evidence and the credibility of the witnesses who offered that evidence. Finally, the trial court had the opportunity, which we lack, of observing the demeanor of the witnesses on the stand.  Our review of the record shows that the trial court carefully weighed all of the evidence and concluded that mother had failed to show "by a preponderance of the evidence that father had committed any acts of family abuse or that a protective order is needed to protect the health and safety of the child."  We conclude this argument is without merit under settled rules of appellate review.  Sandoval, 20 Va. App. at 138, 455 S.E.2d at 732.

## C.  Refusal of the trial court to award a protective order

In a related assignment of error, mother asserts that the court erred when it found that child abuse was not proven.  When reviewing a circuit court's decision on appeal, "we review the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences."  Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003).  "That principle requires us to discard the evidence of appellant which conflicts, either directly or inferentially, with the evidence presented by appellee at trial."  Brandau v. Brandau, 52 Va. App. 632, 635, 666 S.E.2d 532, 534 (2008) (citation omitted).

- 14 -

This case turned on the credibility of the witnesses. N., her mother, and her therapist presented evidence of bruising and other injuries. N.'s testimony that her father inflicted these injuries was corroborated by her mother and her therapist. Father, on the other hand, denied that the abuse occurred, and his testimony was amply corroborated by other witnesses. Witnesses for the father testified that they did not watch N. constantly, and, therefore, their inability to account for the provenance of some of the bruises is not surprising. Furthermore, the bruises were not so frequent – mother testified that they occurred about once per month – nor were the injuries so grave that a pattern of abuse surfaced as the only possible explanation. None of the injuries support any suggestion of a beating with a lacrosse stick. Moreover, it was mother who bore the burden of proving that abuse had occurred. In light of the standard of review, we affirm the decision of the trial court.

### III. ADMISSIBILITY OF THE VIDEOTAPE INTRODUCED BY FATHER

In another assignment of error, mother contends that the trial court erred in admitting into evidence a videotape showing father interacting with N., and N. playing with other children during visitation. On appeal, we review a trial court's decision regarding the admissibility of evidence for abuse of discretion. Gonzales v. Commonwealth, 45 Va. App. 375, 380, 611 S.E.2d 616, 618 (2005) (*en banc*). "Evidence is relevant if it has any logical tendency, however slight, to establish a fact at issue in the case." Ragland v. Commonwealth, 16 Va. App. 913, 918, 434 S.E.2d 675, 678 (1993). "'The test establishing relevance is not whether the proposed evidence conclusively proves a fact, but whether it has any tendency to establish a fact at issue.'" Holsapple v. Commonwealth, 39 Va. App. 522, 537-38, 574 S.E.2d 756, 763 (2003) (*en banc*) (quoting Wise v. Commonwealth, 6 Va. App. 178, 188, 367 S.E.2d 197, 203 (1988)).

The videotape was relevant. Father testified that he was a loving father who would not abuse his daughter. Father also presented evidence that some of N.'s bruises stemmed from N.'s

play with other children. In addition, father's evidence was that N. would make negative reports about his actions that contrasted with her affectionate relationship with and attitude toward him. The videos, which depict father interacting with his daughter, as well as N. interacting with other children, corroborate the account presented by father and his witnesses, even if they are far from conclusive evidence. Had the videotape shown N. recoiling from her father, it certainly would have been relevant and admissible to bolster mother's case. As the United States Supreme Court has noted,

> It is universally recognized that evidence, to be relevant to an inquiry, need not conclusively prove the ultimate fact in issue, but only have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

McKoy v. North Carolina, 494 U.S. 433, 440 (1990) (citations and internal brackets omitted). We find no abuse of discretion in admitting the videotape.[4]

## IV. ATTORNEY'S FEES

Mother argues that the trial court abused its discretion in awarding attorney's fees because (1) she was merely defending on appeal from the juvenile court the protective order that she obtained in that court; (2) the trial court failed to articulate a reason for the award of fees; (3) the court did not make a factual finding regarding the amount of the fees; and (4) awarding fees in this context is contrary to the purpose of Virginia's protective order statute.

Two statutes govern our analysis. First, Code § 16.1-279.1(E) provides that "[t]he court may assess costs and attorneys' fees against either party regardless of whether an order of protection has been issued as a result of a full hearing." The second statute, Code § 16.1-278.19,

---

[4] Moreover, even if admitting these videos was somehow error, we fail to perceive any harm from their admission into evidence. The trial court was well aware that father had prepared select excerpts of the visits to present in court. Indeed, the trial court made no reference to this videotape in announcing its findings.

provides that "the court may award attorneys' fees and costs on behalf of any party as the court deems appropriate based on the relative financial ability of the parties."  On appeal, the imposition of attorney's fees in this context is reviewed for an abuse of discretion.  Lynchburg Div. of Social Servs. v. Cook, 276 Va. 465, 484, 666 S.E.2d 361, 370 (2008).  The abuse of discretion standard "if nothing else, means that the trial judge's 'ruling will not be reversed simply because an appellate court disagrees.'"  Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743 (2006) (citation omitted).

First, the court found that mother had failed to establish her allegations by a preponderance of the evidence.  Second, the trial court was "very troubled" that N. was the subject of such frequent photographing.  The court found it "just too much to be putting on this child."  The court particularly found it disturbing that N. was photographed holding up a copy of the *Washington Post*, "like she has been abducted in Pakistan."  Not only did mother fail to meet her burden of proof by a preponderance of the evidence but, further, the court found that a young child was being subjected to what the trial court characterized as "posturing for litigation."  In light of these findings, we hold that the trial court did not abuse its discretion in awarding attorney's fees.

Mother extensively develops a policy argument, contending that imposing fees upon unsuccessful protection order applicants would undermine the objectives of the protection order statute, and would have a chilling effect on the ability of victims of family abuse to seek the protection of the courts.  This argument, however ably made, was not raised below. Accordingly, we will not consider it.  See Rule 5A:18.

Mother next faults the trial court for "failing to make a factual finding regarding the reasonableness of the award of $14,000." This specific objection was not made below. Therefore, it is procedurally barred by operation of Rule 5A:18.[5]

Finally, mother argues that the court failed to consider mother's financial ability to pay the fees. Code § 16.1-278.19 requires a trial court, when it awards attorney's fees, to consider "the relative financial ability of the parties." See Alexander v. Flowers, 51 Va. App. 404, 416, 658 S.E.2d 355, 360-61 (2008). Here, the trial court did not consider mother's ability to pay in awarding attorney's fees.[6] Therefore, we remand to the trial court for a determination of the appropriate amount of fees, if any, upon consideration of the financial ability of the parties.

Affirmed in part,
reversed in part,
and remanded.

[5] Furthermore, the statutes authorizing courts to award attorney's fees in this context do not require a trial court to articulate on the record a basis for the fee award.

[6] Although mother did not initially object to the imposition of fees at the conclusion of the hearing, she made a specific objection on this basis in her motion for reconsideration a few days after the hearing, and well before entry of the final order. The trial court specifically considered and rejected this motion for reconsideration. Therefore, mother's objection on this point was specific and timely. If the circuit court is aware of the party's objections and has had the opportunity to rule on them, the requirements of Rule 5A:18 are satisfied. See Lee v. Lee, 12 Va. App. 512, 515-16, 404 S.E.2d 736, 738 (1991) (a timely motion to reconsider suffices to preserve an issue for appellate review).