COURT OF APPEALS OF VIRGINIA

Present:   Judges Chafin, Decker and AtLee
Argued at Richmond, Virginia

RYAN NICHOLAS SMILEY

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0054-17-2                       JUDGE TERESA M. CHAFIN
                                                          MAY 1, 2018

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF POWHATAN COUNTY
Paul W. Cella, Judge

Andrew D. Meyer for appellant.

Christopher P. Schandevel, Assistant Attorney General
(Mark R. Herring, Attorney General, on brief), for appellee.


At the conclusion of a jury trial held in the Circuit Court of Powhatan County, Ryan

Nicholas Smiley was convicted of three counts of forcible sodomy and three counts of

aggravated sexual battery.  On appeal, Smiley contends that the circuit court erred by denying his

motion for the appointment of an expert in the field of forensic interviewing to review relevant

materials and rebut certain testimony from the Commonwealth's expert witness.[1]  For the

reasons that follow, we affirm Smiley's convictions.

I.  BACKGROUND

"In accordance with established principles of appellate review, we state the facts in the

light most favorable to the Commonwealth, the prevailing party in the trial court[, and] accord

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Although Smiley presented additional assignments of error in his petition for appeal,
this Court denied his petition as to those assignments of error.  Therefore, the issues presented in
Smiley's additional assignments of error are not before the Court.

the Commonwealth the benefit of all inferences fairly deducible from the evidence." Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004). So viewed, the evidence is as follows.[2]

T. was born on January 15, 2005. In October of 2015, T. lived with her family in a double-wide mobile home owed by her great uncle. Thirteen members of T.'s family lived in the home at this time, including Smiley, the nineteen-year-old stepson of T.'s great uncle. Due to the number of people living in the home, T. and her younger sister did not have their own bedrooms. They slept on couches or pallets in the living room area of the home. Although Smiley shared a bedroom with his brother, he only slept in that bedroom when his brother was not at home. When his brother was at home, Smiley slept in the living room with T. and her sister.

On November 20, 2015, T. told Peggy Jenkins, her elementary school guidance counselor, that Smiley had sexually abused her. T. told Jenkins that Smiley would "hump" her at night when the other members of her family were asleep. She also said that Smiley would touch her "privates" through her clothes. T. explained that she had not told her family about Smiley's actions because she was afraid that she would get in trouble for doing so.

Following her conversation with T., Jenkins reported the sexual abuse allegations to an employee of the Powhatan County Department of Social Services, who in turn reported the allegations to the police. Detective Marilyn Durham of the Powhatan County Sheriff's Office interviewed T. at school on November 23, 2015. T. told the detective that Smiley "humped" her at night and touched her inappropriately, both above and under her clothing.

---

[2] As the parties are fully conversant with the record in this case and this memorandum opinion carries no precedential value, we recite only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

In order to obtain more information regarding the alleged sexual abuse, Durham scheduled a forensic interview of T. Before the forensic interview occurred, however, T.'s family had her evaluated by Elizabeth Martin, a certified sexual assault nurse examiner. Although Martin's examination did not reveal any physical indications of sexual abuse, T. described Smiley's abusive conduct in greater detail to Martin. T. told Martin that Smiley "humped" her while she was sleeping on the couch in the living room of her great uncle's home. T. also told Martin that Smiley kissed her on the lips and breasts, touched her crotch, and "stuck his D in [her] butt." T. clarified that she referred to Smiley's penis as his "D." T. explained that Smiley left her clothes on during these incidents, but that he pulled down her shorts before he placed his penis inside of her. T. told Martin that she did not remember exactly when Smiley started to abuse her, but that it happened frequently, "maybe two times a week."

On December 5, 2015, a forensic interview of T. was conducted by Ian Danielson, the director of the Child Advocacy Center of Richmond. Danielson had received extensive training in the field of forensic interviewing and conducted approximately 250 forensic interviews of children throughout his career. The interview was held at the Child Advocacy Center, and Danielson recorded a video of the interview.

During the interview, T. described Smiley's actions to Danielson. T.'s description of the sexual abuse at issue was consistent with the description that she previously provided to Martin. T. told Danielson, however, that she may have dreamed the incidents of sexual abuse and explained that a family member had told her that she probably dreamed the events. Nonetheless, T. told Danielson that the events "felt real."

Smiley was charged with the offenses at issue in this case based on T.'s statements to Jenkins, Durham, Martin, and Danielson. Prior to his trial, Smiley filed a motion requesting the circuit court to appoint a private forensic interviewer to evaluate T. and the methodology used by

Danielson during his forensic interview. As he was indigent, Smiley requested the circuit court to authorize the payment of state funds to compensate the requested forensic interviewer for his services.

In response to Smiley's motion, the Commonwealth argued that Smiley was not entitled to conduct a second forensic interview of T. Furthermore, the Commonwealth informed the circuit court that T. would likely testify at Smiley's trial. The Commonwealth maintained that the jury could assess T.'s credibility based on her testimony rather than the conclusions of an expert witness. The circuit court agreed with the Commonwealth's argument and denied Smiley's motion.

Smiley filed a renewed motion for the appointment of a forensic interviewer on May 2, 2016. In his renewed motion, Smiley argued that he needed an appointed expert to assess Danielson's interview of T. and provide rebuttal testimony at trial. Smiley argued that an independent forensic interviewing expert would testify that Danielson conducted a "bad, bad interview" and that he "pretty much forced [T.] to make a one-way statement." Smiley claimed that the video of Danielson's forensic interview of T. established that he "asked closed-end questions," and he provided several examples of allegedly improper questions from Danielson's interview. Smiley also argued that Danielson "did not let the interview flow" and that he failed to ask follow-up questions regarding certain statements made by T.

The circuit court denied Smiley's renewed motion. While the circuit court acknowledged that Smiley disagreed with the form of the questions asked by Danielson during the forensic interview, it concluded that Smiley had not met the standard governing the appointment of expert witnesses to assist indigent defendants set forth in Husske v. Commonwealth, 252 Va. 203, 476 S.E.2d 920 (1996). The circuit court also questioned whether Danielson's interview with T. would be admissible in Smiley's trial.

T. testified on the first day of Smiley's jury trial. T. testified that Smiley "put his D in her butt" three or four times while she was sleeping on the couch in the living room of her great uncle's house. T. also explained that Smiley rubbed her breasts and buttocks and that he pulled down her shorts before he put his penis inside of her. Although T. admitted that she told Danielson that she may have dreamed the sexual abuse incidents, she expressly clarified that she did not dream Smiley's conduct and that the abuse "really happened."

Jenkins, Durham, and Martin testified, without objection, regarding T.'s prior statements pertaining to her abuse by Smiley. The Commonwealth also called Danielson to testify during its case-in-chief. With the exception of T.'s statements regarding the possibility that she dreamed the sexual abuse incidents, Danielson did not testify about any specific statements that T. made during the forensic interview. Danielson, however, testified about his qualifications to conduct forensic interviews, and the circuit court recognized him as an expert regarding the forensic interviewing of child victims of sexual abuse. As an expert, Danielson explained that "disclosure is a process, not a one-time event," and that children commonly disclosed additional details in subsequent interviews pertaining to their sexual abuse.

When Smiley questioned Danielson about his forensic interviewing technique on cross-examination, Danielson agreed that it was important to not ask leading questions to a child during a forensic interview because such questions could influence the child's answers. Following the conclusion of the Commonwealth's evidence, Smiley called Danielson as his own witness and questioned him more extensively regarding his forensic interview of T. Notably, Smiley moved to admit the video of the interview into evidence. The video was admitted without objection from the Commonwealth, and Smiley played it for the jury in its entirety. Smiley paused the video at certain points as it was played in court and examined Danielson about particular questions that he asked T. and additional questions that he could have asked her.

At the conclusion of Smiley's trial, the jury convicted him of the charged offenses. The jury recommended the imposition of life sentences of incarceration for each of the forcible sodomy convictions, ten-year sentences of incarceration for each of the aggravated sexual battery convictions, and a total of $30,000 in fines. The circuit court later imposed the sentences recommended by the jury, and this appeal followed.

## II. ANALYSIS

On appeal, Smiley contends that the circuit court erred by refusing to appoint a forensic interviewer to assist him in the preparation of his defense and testify at trial. Smiley argues that he needed the assistance of a forensic interviewer to review and challenge Danielson's forensic interview of T. and provide rebuttal testimony. Upon review, we conclude that the circuit court did not abuse its discretion by denying Smiley's motion for the appointment of a private forensic interviewer under the circumstances of this case.

Upon request, the Commonwealth is required to "provide indigent defendants with the 'basic tools of an adequate defense,' and . . . in certain instances, these basic tools may include the appointment of non-psychiatric experts." Husske, 252 Va. at 211, 476 S.E.2d at 925 (quoting Ake v. Oklahoma, 470 U.S. 68, 77 (1985)). Whether an indigent defendant establishes a sufficient need for the appointment of an expert at the expense of the Commonwealth "is determined on a case-by-case basis, and the determination is a matter resting within a trial court's discretion." Dowdy v. Commonwealth, 278 Va. 577, 595, 686 S.E.2d 710, 720 (2009). Accordingly, a court's decision regarding the appointment of an expert to assist an indigent defendant will not be overturned on appeal in the absence of circumstances establishing that the court has abused its discretion. See id.; Lawlor v. Commonwealth, 285 Va. 187, 231, 738 S.E.2d 847, 872 (2013).

An indigent defendant's right to the appointment of an expert "is not absolute." Husske, 252 Va. at 211, 476 S.E.2d at 925. "[W]hile the Commonwealth is required to provide adequate expert assistance to indigent defendants in certain circumstances, it is not required to provide them with 'all assistance that a non-indigent defendant may purchase.'" Juniper v. Commonwealth, 271 Va. 362, 392, 626 S.E.2d 383, 403 (2006) (quoting Husske, 252 Va. at 211, 476 S.E.2d at 925). "[T]he mere 'fact that a particular service might be of benefit to an indigent defendant does not mean that the service is constitutionally required.'" Husske, 252 Va. at 212, 476 S.E.2d at 926 (quoting Watkins v. Commonwealth, 229 Va. 469, 478, 331 S.E.2d 422, 430 (1985)).

An indigent defendant is not entitled to the assistance of an expert based on a "[m]ere hope or suspicion that favorable evidence is available." Dowdy, 278 Va. at 595, 686 S.E.2d at 720 (quoting Husske, 252 Va. at 212, 476 S.E.2d at 925). Rather, an indigent defendant seeking the appointment of an expert at the Commonwealth's expense "must show a particularized need for such services." Husske, 252 Va. at 213, 476 S.E.2d at 926. A defendant requesting the appointment of an expert "must demonstrate that the subject which necessitates the assistance of the expert is 'likely to be a significant factor in his defense' and that he will be prejudiced by the lack of expert assistance." Id. at 211-12, 476 S.E.2d at 925 (quoting Ake, 470 U.S. at 82-83).

A court considering an indigent defendant's request for the appointment of an expert must "determine, based on the facts of the particular case, the probable value of providing the requested assistance and the risk of error in the criminal proceeding if such [assistance] is not provided." Dowdy, 278 Va. at 593, 686 S.E.2d at 719. An indigent defendant is entitled to expert assistance when "the services of an expert would materially assist him in the preparation of his defense and . . . the denial of such services would result in a fundamentally unfair trial." Husske, 252 Va. at 212, 476 S.E.2d at 925.

In the present case, Smiley failed to establish that the services of a forensic interviewer would have played a significant role in his defense. Smiley requested the assistance of a forensic interviewer to review Danielson's forensic interview of T. and discredit the methodology used in that interview. Any assistance that could have been provided by an appointed forensic interviewer would have been limited to issues arising from Danielson's forensic interview. The majority of the incriminating evidence presented by the Commonwealth in this case, however, was not dependent on Danielson's forensic interview of T.

Danielson's forensic interview was only a part of the Commonwealth's evidence against Smiley. While T. made incriminating statements regarding Smiley's conduct to Danielson, she also made similar statements to Jenkins, Durham, and Martin. The requested forensic interviewer could not have challenged these statements. As their interviews with T. were unrecorded, a forensic interviewer could not have reviewed the interviews to determine whether Jenkins, Durham, or Martin used inappropriate interviewing techniques. Additionally, T.'s statements to Jenkins, Durham, and Martin were made before she was interviewed by Danielson. Thus, an appointed forensic interviewer could not have challenged the statements that T. made to Jenkins, Durham, or Martin by arguing that they were somehow tainted by Danielson's allegedly improper interview.

Furthermore, the requested forensic interviewer could not directly challenge T.'s credibility. At the hearings regarding Smiley's motions to appoint a forensic interviewer, the Commonwealth informed the circuit court that T. intended to testify at Smiley's trial. Although an appointed forensic interviewer could have challenged the interviewing technique used by Danielson during his interview with T. and generally impeached his credibility as an expert in the field of forensic interviewing, the interviewer could not have challenged the credibility of T.'s testimony at trial. "An expert witness may not express an opinion as to the veracity of a

witness because such testimony improperly invades the province of the jury to determine the reliability of a witness." Pritchett v. Commonwealth, 263 Va. 182, 187, 557 S.E.2d 205, 208 (2002).

While the services offered by an appointed forensic interviewer would not have substantially contributed to Smiley's defense, Smiley also failed to establish that he would have been prejudiced by the lack of the expert assistance at issue. As noted by the circuit court, the admissibility of Danielson's forensic interview of T. was questionable. Moreover, Smiley had the ability to challenge Danielson's credibility on cross-examination by questioning him regarding his interviewing techniques. Smiley did not require the assistance of an expert forensic interviewer to identify leading questions or issues that were not fully explored in Danielson's forensic interview. Smiley's attorney was capable of examining Danielson about any objectionable questions asked during the forensic interview and his failure to address certain issues.

In light of the particular circumstances of this case, we conclude that the circuit court did not err by denying Smiley's pretrial motion for the appointment of an independent forensic interviewer. We note, however, that the evidence presented during Smiley's trial underscored the rationality of the circuit court's decision.[3] At trial, T. testified about her sexual abuse by Smiley, and Jenkins, Durham, and Martin testified regarding T.'s prior statements concerning the sexual abuse at issue. As previously stated, the requested forensic interviewer could not have effectively challenged the testimony of these witnesses.

---

[3] On appeal, the Commonwealth contends (without conceding any error) that the denial of the expert assistance at issue constituted harmless error based on the evidence presented at Smiley's trial and his thorough examination of Danielson. As we conclude that the circuit court did not err by denying Smiley's motion for the appointment of a forensic interviewer, we do not reach the merits of the Commonwealth's harmless error argument.

Smiley also extensively questioned Danielson about his forensic interview of T. on both direct and cross-examination.  He played the hour-long video of Danielson's interview of T. for the jury, and asked Danielson numerous questions about his use of "close-ended" questions.  Smiley also questioned Danielson about his failure to ask follow-up questions regarding certain subjects, including T.'s statements concerning the possibility that she dreamed the sexual abuse at issue.  Additionally, Smiley asked Martin about the importance of asking children open-ended questions during medical sexual assault examinations.

In summary, we hold that the circuit court did not abuse its discretion by denying Smiley's request for the appointment of a private forensic interviewer.  As explained by the circuit court, Smiley failed to meet the standards set forth in Husske and other cases governing the appointment of expert witnesses to assist indigent defendants at the Commonwealth's expense.  The services offered by the expert at issue would not have significantly assisted Smiley at trial or in the preparation of his defense.  Further, Smiley was not prejudiced by the denial of the expert assistance at issue because he had the ability to thoroughly examine Danielson regarding his forensic interview of T.

### III.  CONCLUSION

The circuit court did not abuse its discretion by denying Smiley's motion for the appointment of a private forensic interviewer.  Accordingly, we affirm the circuit court's decision and Smiley's convictions.

Affirmed.